[No. S044186. Feb. 5, 1996.]

THE PEOPLE, Plaintiff and Appellant, v.
JAMES MICHAEL BRIGHT, Defendant and Respondent.

## COUNSEL

Paul J. Pfingst and Edwin L. Miller, Jr., District Attorneys, Thomas F. McArdle and Karen I. Doty, Deputy District Attorneys, for Plaintiff and Appellant.

Merle N. Schneidewind, under appointment by the Supreme Court, for Defendant and Respondent.

## OPINION

**GEORGE, J.**—Penal Code section 664[1] prescribes the punishment for an attempt to commit a crime, providing in part that, if the offense attempted is one for which the maximum sentence is life imprisonment or death, the

[1]All further statutory references are to the Penal Code unless otherwise indicated.

person guilty of that attempt shall be subject to the punishment of imprisonment for a term of five, seven, or nine years. (§ 664, subd. (a).) As amended in 1986, the statute further provides that when the crime attempted is "willful, deliberate, and premeditated murder," the person guilty of that attempt shall be subject to the punishment of imprisonment for life with the possibility of parole. (*Ibid.*)

The issue for our determination is whether, for double jeopardy purposes (U.S. Const., 5th Amend.; Cal. Const., art. I, § 15), the foregoing provision of section 664 prescribing a sentence of life imprisonment for an attempt to commit murder that is willful, deliberate, and premeditated establishes *a greater degree* of attempted murder, i.e., an offense of "first degree attempted murder," or, instead, constitutes a *penalty provision* that prescribes the circumstances under which a person convicted of the offense of attempted murder will be subject to a *greater base term.*[2] In the present case, the trial court determined that the offense of attempted willful, deliberate, and premeditated murder (as charged in the information) constituted a greater degree of "simple" attempted murder, and that the jury's verdict convicting defendant of attempted murder alone, without a finding on the allegation that the offense attempted was willful, deliberate, and premeditated murder, thus constituted an acquittal of the so-called greater offense. On this basis the trial court ruled that double jeopardy principles barred retrial of the separate allegation, and dismissed that allegation.

We conclude that the provision in section 664, subdivision (a), imposing a greater punishment for an attempt to commit a murder that is "willful, deliberate, and premeditated" does not create a greater degree of attempted murder but, rather, constitutes a penalty provision that prescribes an increase

---

[2]Although, as we discuss below, the language employed in the segment of section 664 at issue in this case corresponds to the language typically employed in "sentence enhancement" provisions under the Determinate Sentencing Act of 1976, strictly speaking this portion of section 664 does not constitute an "enhancement" within the meaning of rule 405(c) of the California Rules of Court, which defines "enhancement" as "an additional term of imprisonment added to the base term," because this statutory provision establishes an increased *base* term for the crime of attempted murder upon a finding of specified circumstances. For this reason, instead of phrasing the issue before us as whether the "premeditated murder" provision of section 664 creates (1) a "greater degree" of the offense of attempted murder, or (2) a "sentence enhancement," we shall refer to the second of these two alternatives as a "penalty provision specifying a greater term," and shall refer to an allegation of a circumstance that justifies an increased sentence as a "penalty allegation." (See *People* v. *Wims* (1995) 10 Cal.4th 293, 305 [41 Cal.Rptr.2d 241, 895 P.2d 77] [distinguishing statutes that "articulate[] a *penalty provision*" from those that create a "a substantive crime" (original italics)]; see also *People* v. *Jenkins* (1995) 10 Cal.4th 234 [40 Cal.Rptr.2d 903, 893 P.2d 1224] [interpreting and applying § 667.7, another statutory provision that, although not strictly an "enhancement" within the meaning of rule 405(c), provides for an increased sentence upon the finding of specified circumstances].)

in punishment (a greater base term) for the offense of attempted murder. The jury verdict convicting defendant of attempted murder, without a finding on the penalty allegation, therefore did not constitute an acquittal of a so-called greater degree of attempted murder. Accordingly, the double jeopardy prohibition does not bar retrial of the penalty allegation.

For these reasons, we affirm the judgment of the Court of Appeal, which reversed the trial court's dismissal of the allegation that the attempted murder was willful, deliberate, and premeditated.

I

On June 6, 1992, in the early morning hours, San Diego County Sheriff's Deputy Paul Kain observed defective brake lights on a vehicle driven by defendant James Michael Bright, and decided to detain the vehicle. As Kain maneuvered his patrol car behind that of defendant and signaled for him to stop, a passenger in defendant's vehicle observed defendant retrieve a .357 magnum from under the seat. Bright continued to drive while holding the weapon in his hand. He did not respond immediately to the patrol car signal, but waited to pull over at a location where the deputy would be able to approach only the driver's side of the vehicle and not the passenger side. As the deputy approached defendant's automobile on foot, defendant aimed his weapon at him and fired all six rounds, wounding the deputy with several bullets in the waist, abdomen, and leg. Defendant then drove off.

Deputy Kain was able to crawl back to his patrol car and call for assistance, providing a description of defendant and his vehicle. Nine days later defendant was arrested.

By information filed July 30, 1992, the People charged that defendant "did willfully, deliberately, and premeditatedly attempt to murder Paul Kain, a human being," in violation of sections 664 and 189, further alleging that in the commission of this offense defendant personally used a firearm in violation of section 12022.5, subdivision (a), discharged a firearm from a motor vehicle in violation of section 12022.55, and inflicted great bodily injury in violation of section 12022.7. The information also charged that defendant, a felon, did willfully and unlawfully possess a firearm in violation of section 12021, subdivision (a).

At trial, the jury was instructed on attempted murder in accordance with the standard instruction, CALJIC No. 8.66 (5th ed. 1988),[3] and was instructed separately on the premeditation allegation in accordance with CALJIC No. 8.67 (5th ed. 1988), which informed the jury, among other matters, that "[i]f you find the defendant guilty of attempt to commit murder, you must determine whether this allegation is true or not true."[4]

During its deliberations, the jury submitted a note to the trial court requesting clarification as to whether they could return a verdict on the charge of attempted murder even if they were unable to reach a unanimous verdict on the allegation of premeditation. The trial court initially instructed the jury that it must unanimously agree on the allegation of premeditation before rendering a verdict on the charge of attempted murder. The following day, however, after the prosecutor brought to the court's attention decisional authority inconsistent with the court's earlier response to the jury's inquiry, the court directed the jury to disregard its earlier instruction and told them that "you may make a finding of guilty or not guilty as to the attempted murder charge and consider separately whether you can resolve the question of premeditation if that resolution is called for." Defense counsel did not object to this corrected instruction.

The jury returned a verdict convicting defendant of attempted murder but was unable to make a finding on the premeditation allegation.[5] The verdict form reflected the jury's finding that defendant was guilty of attempted murder, but left blank a space for the separate finding as to whether this offense was premeditated. The trial court declared a mistrial as to that allegation, which was set for retrial. The trial court thereafter denied a defense motion to dismiss the premeditation allegation on the ground of insufficiency of the evidence.

Defendant subsequently filed another motion to dismiss the premeditation allegation (before a judge other than the trial judge, who had died following

[3]CALJIC No. 8.66 provides in part: "Every person who attempts to murder another human being is guilty of a violation of Sections 664 and 187 of the Penal Code. [¶] Murder is the unlawful killing of a human being with malice aforethought. [¶] In order to prove such crime, each of the following elements must be proved; [¶] 1. A direct but ineffectual act was done by one person towards killing another human being; and [¶] 2. The person committing such act harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being. [¶] In determining whether or not such an act was done, it is necessary to distinguish between mere preparation, on the one hand, and the actual commencement of the doing of the criminal deed, on the other."

[4]CALJIC No. 8.67 provides in part: "It is also alleged in . . . the information that the crime attempted was willful, deliberate, and premeditated murder. If you find the defendant guilty of attempt to commit murder, you must determine whether this allegation is true or not true."

[5]The jury also found defendant guilty of the offense of unlawful possession of a firearm, and found true the allegations of personal use of a firearm, discharging a firearm from a motor vehicle, and infliction of great bodily injury.

trial) on the ground that defendant already had been placed in jeopardy on the charge of attempted premeditated murder, and that principles of double jeopardy barred retrial of that charge. The thrust of the defense argument was as follows: the offense of attempted murder is divided into degrees—first degree attempted murder and second degree attempted murder. Attempted premeditated murder, within the meaning of section 664, subdivision (a), constitutes first degree attempted murder. In the present case, the information alleged that defendant "did willfully, deliberately, and premeditatedly attempt to murder," thereby charging him with first degree attempted murder. Under sections 1157 and 1159, the jury verdict finding defendant guilty of attempted murder, without specifying the degree, constituted a conviction of second degree attempted murder, a lesser offense included within the offense of attempted premeditated murder. Accordingly, because the jury reached a unanimous verdict convicting defendant of a lesser included offense of the offense charged in the information, the prohibition against double jeopardy barred retrial of the greater offense of attempted premeditated murder.

In opposing the foregoing motion, the People argued the particular language of the charging document is irrelevant to the determination whether an offense is divided into degrees, and that "the form of the pleading itself does not determine what is classified as an allegation." Citing several appellate decisions holding that the offense of attempted murder is not divided into degrees, the People asserted that this offense is not a lesser offense included within the offense of attempted premeditated murder but, rather, that section 664's provision for greater punishment for an attempt to commit willful, deliberate, and premeditated murder constitutes a penalty provision that may increase the sentence for the offense of attempted murder. The People maintained that, because the jury was unable to reach a verdict on the premeditation allegation, the trial court properly declared a mistrial and ordered a retrial of the allegation.

In ruling upon the double jeopardy motion, the trial court concluded that the language of the accusatory pleading was determinative of whether the allegation of premeditation charged a greater degree of attempted murder. The court determined that, notwithstanding case law holding there are no degrees of the offense of attempted murder, in this particular case the language employed by the prosecution in charging the offense in the accusatory pleading—that defendant "did willfully, deliberately, and premeditatedly attempt to murder"—and the "partial jury verdict" convicting defendant of the offense of attempted murder without a finding on the allegation of premeditation, effectively created greater and lesser degrees of that offense. Concluding that the jury verdict constituted an acquittal of the greater

offense of attempted premeditated murder, the trial court granted defendant's motion to strike the premeditation allegation and barred retrial of that allegation on double jeopardy grounds. At sentencing, the court imposed a total sentence of 17 years, 8 months, in state prison.

On appeal, the Court of Appeal reversed the order dismissing the premeditation allegation, holding that defendant could be retried on that allegation. The court determined that defendant's double jeopardy claim was dependent upon the premise that attempted premeditated murder constituted a greater degree of the offense of attempted murder. Rejecting this premise, however, the court concluded that the determination whether an offense is divided into degrees lies exclusively within the power of the Legislature, and that such a legislative determination cannot be altered or otherwise affected by the description of the offense contained in the charging document or by the form in which the verdict is received. Citing *People* v. *Douglas* (1990) 220 Cal.App.3d 544, 549 [269 Cal.Rptr. 579], the Court of Appeal held that the offense of attempted murder is not divided into degrees and thus rejected defendant's claim that the jury's failure to reach a verdict on the premeditation allegation constituted an acquittal of the so-called "greater offense" of "first degree attempted murder." The court concluded that the premeditation allegation provided for an increased punishment for the offense of attempted murder, rather than a greater degree of the offense; accordingly, retrial on the limited question presented by the penalty allegation was not barred by double jeopardy principles.

We granted defendant's petition for review.

## II

■ The double jeopardy clauses of the Fifth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, and article I, section 15, of the California Constitution, guarantee that a person shall not be placed twice "in jeopardy" for the "same offense." The double jeopardy bar protects against a second prosecution for the same offense following an acquittal or conviction, and also protects against multiple punishment for the same offense. (*Schiro* v. *Farley* (1994) 510 U.S. 222, 229-230 [127 L.Ed.2d 47, 56-57, 114 S.Ct. 783, 789]; *People* v. *Guillen* (1994) 25 Cal.App.4th 756, 761 [31 Cal.Rptr.2d 653].) Under both federal and California law, greater and lesser included offenses constitute the "same offense" for purposes of double jeopardy. (See *Brown* v. *Ohio* (1977) 432 U.S. 161, 164, 168-169 [53 L.Ed.2d 187, 193, 195-196, 97 S.Ct. 2221] [the double jeopardy bar prohibits successive prosecution and cumulative punishment for greater and lesser included offenses]; § 1023 [a defendant's prior conviction, acquittal, or jeopardy is a bar to another prosecution for "an

offense necessarily included" in the one formerly charged, "of which he might have been convicted" under the former accusatory pleading]; 1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Defenses, § 325, p. 377 [§ 1023 is applied irrespective of whether the first prosecution is for the greater or the lesser offense].) Thus, a conviction of a lesser included offense bars subsequent prosecution of the greater offense. (See *Stone* v. *Superior Court* (1982) 31 Cal.3d 503, 511, 518 [183 Cal.Rptr. 647, 646 P.2d 809]; *People* v. *Lohbauer* (1981) 29 Cal.3d 364, 372 [173 Cal.Rptr. 453, 627 P.2d 183]; *In re James M.* (1973) 9 Cal.3d 517, 520 [108 Cal.Rptr. 89, 510 P.2d 33].) For this reason, we have observed that a jury should be admonished not to return a verdict on the lesser offense until it has reached a verdict acquitting the defendant of the greater offense. (See *People* v. *Kurtzman* (1988) 46 Cal.3d 322, 329 [250 Cal.Rptr. 244, 758 P.2d 572].)

Under section 1157, if a crime is divided into degrees and the jury in returning a guilty verdict fails to determine the degree of the crime of which the defendant is guilty, the offense is deemed to be of the lesser degree.[6] Under the double jeopardy principles set forth above, a conviction of the lesser degree constitutes an implied acquittal of the greater degree.

■ In contrast to greater and lesser degrees of an offense, a penalty provision prescribes an added penalty to be imposed when the offense is committed under specified circumstances. A penalty provision is separate from the underlying offense and does not set forth elements of the offense or a greater degree of the offense charged. (*People* v. *Bryant* (1992) 10 Cal.App.4th 1584, 1596-1598 [13 Cal.Rptr.2d 601]; *People* v. *Wolcott* (1983) 34 Cal.3d 92, 101 [192 Cal.Rptr. 748, 665 P.2d 520].) The jury does not decide the truth of the penalty allegation until it first has reached a verdict on the substantive offense charged. (*People* v. *Wolcott, supra,* 34 Cal.3d at p. 101.) Accordingly, a defendant's conviction of the underlying substantive offense does not (on double jeopardy grounds) bar further proceedings, such as retrial, on a penalty allegation. (See *People* v. *Bryant, supra,* 10 Cal.App.4th at pp. 1597-1598.) Thus, the circumstance that the jury has returned a verdict on the underlying offense, but is unable to make a finding on the penalty allegation, does not constitute an "acquittal" of (or otherwise bar retrial of) the penalty allegation on the ground of double

---

[6]Section 1157 provides in pertinent part: "Whenever a defendant is convicted of . . . [an] attempt to commit a crime which is distinguished into degrees, the jury . . . must find the degree of the . . . attempted crime of which he is guilty. Upon the failure of the jury . . . to so determine, the degree of the . . . attempted crime of which the defendant is guilty, shall be deemed to be of the lesser degree."

Section 1159 provides that "[t]he jury . . . may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, or of an attempt to commit the offense."

jeopardy. (*People* v. *Guillen, supra,* 25 Cal.App.4th 756, 762; *People* v. *Schulz* (1992) 5 Cal.App.4th 563, 568-569 [7 Cal.Rptr.2d 269].) A mistrial does not constitute a termination of jeopardy, and accordingly double jeopardy does not arise from the legal necessity of a mistrial. (*Stone* v. *Superior Court, supra,* 31 Cal.3d 503, 516.)

Under these general principles, if the phrase "willful, deliberate, and premeditated murder" in section 664, subdivision (a), establishes a greater degree of the offense of attempted murder, a jury verdict convicting a defendant of the lesser degree of attempted murder would constitute an implied acquittal of the greater degree. The prohibition against double jeopardy therefore would bar retrial of the greater degree of attempted willful, deliberate, and premeditated murder. If, on the other hand, this provision constitutes a penalty provision related to the single offense of attempted murder, a conviction of attempted murder would not constitute an acquittal of (or otherwise bar retrial of) the penalty allegation that the attempted murder was willful, deliberate, and premeditated.

III

The provision of section 664, subdivision (a), that prescribes the specific penalty of life imprisonment with the possibility of parole "if the crime attempted is willful, deliberate, and premeditated murder, as defined in Section 189," was added to the statute by a 1986 legislative amendment. (Stats. 1986, ch. 519, § 2, p. 1859.) In order to ascertain the meaning and proper characterization of this segment of the statute, it is necessary to review the history of section 664 prior to the 1986 amendment.

Before 1978, section 664 provided in part that "if the crime attempted is one in which the maximum sentence is life imprisonment or death the person guilty of such attempt shall be punishable by imprisonment in the state prison for a term of five, six, or seven years." At that time, the maximum punishment for first degree murder was life imprisonment or death and the maximum punishment for second degree murder was life imprisonment. Thus, no distinction was made with respect to the punishment for attempted murder based upon whether the murder attempted, if completed, would have been of the first degree or second degree.[7]

In 1978, the Legislature amended section 664, adding former subdivision 4 (Stats. 1978, ch. 1166, p. 3771), currently designated as subdivision (d),

[7]Prior to the enactment of the determinate sentencing law in 1976, the punishment for first degree murder was life imprisonment and the punishment for second degree murder was imprisonment for five years to life. At that time, section 664 prescribed "a term of imprisonment of not more than 20 years" as the punishment for an attempt to commit any crime that carried a potential life sentence. (Stats. 1953, ch. 713, § 1, p. 1983.) Thus, no distinction was

which states that if the underlying crime is divided into degrees, "an attempt to commit the crime may be of any of those degrees, and the punishment for the attempt shall be determined as provided by this section."[8] Thus, with regard to crimes divided into degrees and punishable by imprisonment for terms of different lengths depending upon the degree, the punishment for the attempt is based upon the punishment specified for the degree of the underlying crime attempted. With respect to attempted murder, however, the maximum sentence for both first degree and second degree murder was (at the time of the operative date of the 1978 amendment, and still is) at least life imprisonment, and therefore the punishment provided for the offense of attempted murder was the same regardless of the degree of the underlying murder attempted. Thus, as of the operative date of the 1978 amendment, section 664 prescribed the identical punishment for attempted murder regardless whether the murder attempted was of the first or second degree.

A number of appellate decisions rendered after the 1978 amendment specifically recognized that, because (among other reasons) the punishment is the same regardless of the degree of the murder attempted, the crime of attempted murder is not divided into degrees, notwithstanding the addition of the predecessor to section 664, subdivision (d). (See *People* v. *Miller* (1992) 6 Cal.App.4th 873, 879 [8 Cal.Rptr.2d 193]; *People* v. *Macias* (1982) 137 Cal.App.3d 465, 472 [187 Cal.Rptr. 100]; see also *People* v. *Cooper* (1991) 53 Cal.3d 771, 832 [281 Cal.Rptr. 90, 809 P.2d 865].) In *People* v. *Macias, supra,* 137 Cal.App.3d 465, the defendant was convicted of attempted murder, among other offenses, and was sentenced under section

---

made between attempted first degree and second degree murder, insofar as the punishment prescribed for attempted murder.

As part of the Determinate Sentencing Act of 1976 (effective July 1, 1977), section 190 was amended to prescribe as the punishment for first degree murder a term of life imprisonment (or the alternative of the death penalty), and for second degree murder a determinate term of five, six, or seven years. (Stats. 1976, ch. 1139, § 133, p. 5098.) Section 664 also was amended to provide determinate terms for all attempts, including one-half the term prescribed for the completed crime or, if the maximum term for the completed crime was life, a determinate term of five, six, or seven years. (Stats. 1976, ch. 1139, § 265, p. 5137.) Thus, for a brief period, effective July 1, 1977, the punishment for attempted first degree murder was five, six, or seven years, and for attempted second degree murder two and a half, three, or three and a half years.

On November 7, 1978, by passage of the Briggs Initiative, the California electorate amended section 190, changing the punishment for first degree murder to 25 years to life and for second degree murder to 15 years to life. The initiative was silent as to attempted murder, however, and section 664, as amended, remained the law, unchanged by the initiative. Consequently, the statutory scheme once again provided that a defendant convicted of attempted murder would face the same punishment regardless of the degree of the murder attempted.

[8]The 1978 amendment also substituted "five, seven, or nine years" for "five, six, or seven" years as the punishment provided where the crime attempted is one in which the maximum sentence is life imprisonment or death.

664. On appeal, he maintained that his sentence for attempted murder violated his constitutional rights, because a conviction for attempted second degree murder carried the identical punishment as a conviction for attempted first degree murder. Rejecting this argument, the court concluded that "since the punishment for attempted murder is five, seven or nine years, regardless of whether the murder attempted was of the first or second degree, the crime of attempted murder is not in fact divided into degrees." (137 Cal.App.3d at pp. 471-472.) In *People* v. *Cooper, supra*, 53 Cal.3d 771, this court, rejecting the contention of the defendant that the trial court had erred in failing to instruct on attempted second degree murder, cited *People* v. *Macias, supra*, 137 Cal.App.3d 465, 472, as stating the law that " 'the crime of attempted murder is not in fact divided into degrees,' at least at the time of this crime [prior to the 1986 amendment of the statute]." (53 Cal.3d at p. 832.)

Other appellate courts recognized the inherent inconsistency between different theories of first and second degree murder that do not include the element of intent to kill (e.g., felony murder), and the crime of attempted murder, which requires a specific intent to kill. (See *People* v. *Guerra* (1985) 40 Cal.3d 377, 386 [220 Cal.Rptr. 374, 708 P.2d 1252]; *People* v. *Wein* (1977) 69 Cal.App.3d 79, 92 [137 Cal.Rptr. 814] ["[T]he felony-murder rule has no application to a charge of attempted murder. An attempted murder requires the intent to take a human life—an element which cannot be supplied by the . . . felony-murder rule."].) In *People* v. *Guerra, supra*, 40 Cal.3d 377, the court reversed a conviction of attempted murder based upon error arising from instructions on the crimes of attempt and first and second degree murder. The trial court had instructed the jury generally on the elements of an attempt to commit a crime, including the specific intent to commit the crime, and further instructed that the jury could find the defendant guilty of murder on any of three theories—express malice, implied malice, or felony murder. The trial court, however, failed to inform the jury that the crime of attempted murder requires a specific intent to kill, an omission that led this court to conclude that the instructions improperly implied that the jury could find the defendant guilty of attempted murder " 'if it determined that [he] intentionally committed an act which, were the victim to die, would constitute murder on an implied malice or felony-murder theory. . . . [S]uch instructions are inadequate. [Citation.]' " (40 Cal.3d at p. 386.)

Following the *Guerra* decision, standard jury instructions on attempted murder have not distinguished between purported degrees of attempted murder, and instead have defined the single crime of attempt to commit murder. (See CALJIC No. 8.66, set forth in fn. 3, *ante*.) As explained previously, in the present case, at defendant's trial, the jury was not instructed on separate degrees of attempted murder, but solely on the single crime of attempt to commit murder.

Thus, as shown, at the time of the 1986 amendment to section 664, it was recognized generally that the crime of attempted murder was not divided into degrees.

## IV

In 1986, the Legislature added to section 664, subdivision (a),[9] the provision prescribing life imprisonment with the possibility of parole as the punishment where the "crime attempted is willful, deliberate, and premeditated murder, within the meaning of section 189," and also added a further sentence stating that "[t]he additional term provided in this section for attempted willful, deliberate, and premeditated murder shall not be imposed unless the fact the attempted murder was willful, deliberate, and premeditated is charged in the accusatory pleading and admitted or found to be true by the trier of fact."[10]

 The principal issue before us is whether the 1986 amendment should be interpreted as changing existing law so as to divide the crime of attempted murder into separate degrees—an attempt to commit willful, deliberate, and premeditated murder ("first degree attempted murder") and all other attempts to commit murder ("second degree attempted murder")[11] —or, instead, as establishing a penalty provision that increases the punishment if the trier of fact, after finding the defendant guilty of the crime of

---

[9] At the time of the 1986 amendment, current subdivision (a) was designated subdivision 1.

[10] The 1986 version of section 664 provided in part (Stats. 1986, ch. 519, § 2, p. 1859):

"Every person who attempts to commit any crime, but fails, or is prevented or intercepted in the perpetration thereof, is punishable, where no provision is made by law for the punishment of such attempts, as follows:

"1. If the offense so attempted is punishable by imprisonment in the state prison, the person guilty of such attempt is punishable by imprisonment in the state prison for one-half the term of imprisonment prescribed upon a conviction of the offense so attempted; provided, however, that if the crime attempted is willful, deliberate, and premeditated murder, as defined in Section 189, the person guilty of that attempt shall be punishable by imprisonment in the state prison for life with the possibility of parole; provided, further, that if the crime attempted is any other one in which the maximum sentence is life imprisonment or death the person guilty of the attempt shall be punishable by imprisonment in the state prison for a term of five, seven, or nine years. The additional term provided in this section for attempted willful, deliberate, and premeditated murder shall not be imposed unless the fact that the attempted murder was willful, deliberate, and premeditated is charged in the accusatory pleading and admitted or found to be true by the trier of fact.

". . . . . . . . . . . . . . . . . . . . . . . .

"4. If a crime is divided into degrees, an attempt to commit the crime may be of any such degree, and the punishment for the attempt shall be determined as provided by this section."

[11] It is unclear from the briefing whether it is the position of defendant that section 664, subdivision (d), also creates offenses of "attempted first degree murder" and "attempted second degree murder." As we have seen, however, since the enactment of the predecessor to section 664, subdivision (d), in 1978, California courts consistently have interpreted the

attempted murder, also finds that the murder attempted was willful, deliberate, and premeditated.

A similar issue was presented to the Court of Appeal in *People* v. *Douglas*, *supra*, 220 Cal.App.3d 544. In that case, the defendant was charged with attempted murder. At trial, the jury was instructed in accordance with CALJIC No. 8.66 (the general attempted murder instruction given in the present case) and CALJIC No. 8.67, which directed the jury to make a finding as to whether the offense was willful, deliberate, and premeditated. The jury returned a verdict convicting the defendant of attempted murder, among other crimes, with a finding that he acted willfully, deliberately, and with premeditation. He was sentenced under section 664, subdivision (a), to a term of life imprisonment with the possibility of parole. On appeal, he asserted the trial court erred in failing to instruct on attempted second degree murder. He maintained (as does defendant in the present case) that the crime of attempted murder is divided into degrees and that attempted second degree murder is a lesser offense included within the offense of attempted willful, deliberate, and premeditated attempted murder. He also asserted that the jury's failure to specify the degree of the offense established the crime as attempted second degree murder as a matter of law, by virtue of section 1157. (220 Cal.App.3d at p. 548.)

The appellate court in *Douglas*, affirming the conviction, rejected these contentions, concluding that the 1986 amendment to section 664 prescribing a punishment of life imprisonment with the possibility of parole for attempted murder that is willful, deliberate, and premeditated, did not create a distinct degree of attempted murder. The court reasoned: "The imposition of separate penalties for different levels of culpability for attempted murder may resemble the degree gradations of the completed crime; however, the power to define criminal conduct and determine penalties is exclusively

statute as *not* dividing the crime of attempted murder into degrees; additionally, the current standard jury instructions on attempted murder, providing for a single instruction on attempted murder, with a separate instruction on the premeditation allegation which the jury is to determine only if it finds the defendant guilty of attempted murder, are inconsistent with such an interpretation of the statute. If attempted murder were divided into degrees in this manner, a jury verdict finding a defendant guilty of attempted murder, without specifying the degree of murder, would constitute a conviction of "attempted second degree murder" and an implied acquittal of "attempted first degree murder," and thus logically would preclude a subsequent finding by the jury of the truth of the separate allegation of premeditation. (See, e.g., *People* v. *Superior Court* (*Marks*) (1991) 1 Cal.4th 56, 74-75 [2 Cal.Rptr.2d 389, 820 P.2d 613] [if a jury returns a verdict convicting a defendant of murder without specifying the degree, § 1157 renders that verdict one of second degree murder, even if the jury, at the same time it returned its murder verdict, also found true a special circumstance allegation that, by its terms, could have been found true only if the jury had found defendant guilty of first degree murder].) Defendant appropriately does not suggest that section 664 properly is subject to such an interpretation.

vested in the legislative branch, subject to constitutional provisions. [Citation.] The division of a crime into degrees carries more than linguistic significance. It requires an exacting degree of specificity in the jury verdict, court determination or guilty plea. (E.g., §§ 1097, 1157, 1192-1192.2.) Accordingly—and in view of the broad impact of the 'degree' distinction—we construe section 664, subdivision 1 narrowly and do not find degrees of attempted murder where the Legislature has not expressly provided for same." (220 Cal.App.3d at p. 549.)

Although defendant contends that *People* v. *Douglas, supra,* 220 Cal.App.3d 544, was wrongly decided, we conclude that the Court of Appeal in that case engaged in the proper construction of the 1986 amendment. As noted in *Douglas (id.,* at p. 549), the division of a crime into degrees constitutes an exclusively legislative function (see *People* v. *Dillon* (1983) 34 Cal.3d 441, 477-478 [194 Cal.Rptr. 390, 668 P.2d 697]; *In re Lynch* (1972) 8 Cal.3d 410, 414 [105 Cal.Rptr. 217, 503 P.2d 921]; *People* v. *Macias, supra,* 137 Cal.App.3d at p. 475) that has broad consequences with respect to the prosecution of the particular crime. Therefore, in determining whether the reference in section 664, subdivision (a), to attempted "willful, deliberate, and premeditated murder" establishes a greater degree of attempted murder, we look to the probable intent of the Legislature in enacting the 1986 amendment.

In ascertaining legislative intent, we turn first to the statutory language employed. (*People* v. *Broussard* (1993) 5 Cal.4th 1067, 1071 [22 Cal.Rptr. 278, 856 P.2d 1134].) Nothing in the wording of the amendment reflects a legislative intent to create a greater degree of the offense of attempted murder, unlike legislative provisions that specifically and expressly establish higher degrees of crimes where aggravating circumstances are present. (See *People* v. *Chambers* (1972) 7 Cal.3d 666, 671 [102 Cal.Rptr. 776, 498 P.2d 1024].) The language of the newly added provision—that "[t]he *additional term* provided in this section for attempted willful, deliberate, and premeditated murder shall not be imposed *unless the fact* that the attempted murder was willful, deliberate, and premeditated is charged in the accusatory pleading and *admitted or found to be true by the trier of fact*" (§ 664, subd. (a), italics added)—is the language typically employed in describing sentence enhancements, as opposed to defining a crime or prescribing the term of imprisonment for the crime itself. (See 3 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Punishment for Crimes, § 1473, p. 1749 [generally, enhancement provisions refer to imposition of an "additional term"]; see, e.g., §§ 667.7, 667.72, 667.75, 12022, 12022.5, 12022.55; see also 3 Witkin & Epstein, Cal. Criminal Law, *op. cit. supra,* § 1473, p. 1750 [a statute may include both provisions specifying the punishment for a crime and provisions imposing enhancements].)

Thus, the statutory language employed in prescribing an additional penalty for attempted murder where the jury finds true as charged the aggravating circumstance that the offense was willful, deliberate, and premeditated reflects a legislative intent to create a penalty provision specifying a greater term, rather than a substantive offense. Moreover, as we have seen, at the time of the 1986 amendment it was well established that the crime of attempted murder was not divided into degrees, and we may presume that, had the Legislature intended to alter this generally recognized rule, it would have done so explicitly. We are unaware of any California penal provision creating degrees of an offense by implication. For these reasons, we find no basis for defendant's conclusion that, in amending the statute to prescribe a life sentence for attempted murder that is willful, deliberate, and premeditated, the Legislature sought to carve out a separate, higher degree of the crime of attempted murder.

Subdivision (d) of section 664—specifying that *if* a crime is divided into degrees, an attempt to commit that crime may be of any of those degrees—does not require that attempted murder that is willful, deliberate, and premeditated be designated as first degree attempted murder. As explained previously, subdivision (d) was added to section 664 in 1978 (as subdivision 4), and, at the time of the 1986 amendment, subdivision (d) never had been construed as establishing degrees of attempted murder based upon the degree of the murder that was attempted. No aspect of the 1986 amendment suggests that, *as a result of this amendment,* subdivision (d) henceforth should be construed as dividing attempted murder into degrees.

Moreover, although defendant argues that attempted murder that is willful, deliberate, and premeditated, within the meaning of the 1986 amendment, is a higher degree of attempted murder under section 664, subdivision (d), i.e., "attempted first degree murder," first degree murder under section 189 encompasses more categories of murder than those that are "willful, deliberate, and premeditated." Accordingly, the 1986 amendment does not provide a greater punishment for *any* attempt to commit first degree murder, but only for attempts to commit those first degree murders that are willful, deliberate, and premeditated. If the charge of attempted murder is based upon an intended murder that, if completed, would be of the first degree under some *other* category of first degree murder, such attempted murder would not subject the defendant to the enhanced punishment prescribed by the 1986 amendment, but rather to the same punishment provided for an attempt to commit second degree murder. Accordingly, the 1986 amendment did not establish a higher degree of murder—"attempted first degree murder"—premised upon an attempt to commit *any* murder that, if completed, would constitute first degree murder under section 189, and thus did not

divide the offense of attempted murder into degrees under the provisions of section 664, subdivision (d).

For these reasons, we conclude that the provision of section 664, subdivision (a), prescribing a punishment of life imprisonment with the possibility of parole for an attempt to commit murder that is "willful, deliberate, and premeditated" does not establish a greater degree of attempted murder but, rather, sets forth a penalty provision prescribing an increased sentence (a greater base term) to be imposed upon a defendant's conviction of attempted murder when the additional specified circumstances are found true by the trier of fact.[12]

## V

The trial court determined that, even if the Legislature by the 1986 amendment did not establish a greater degree of attempted murder, the language employed in the information in this particular case—charging in a single paragraph that defendant "did willfully, deliberately, and premeditatedly attempt to murder"—and the trial judge's acceptance of a "partial jury verdict" convicting defendant of attempted murder alone, created greater and lesser degrees of attempted murder and resulted in defendant's conviction of the lesser degree. In support of this determination, the trial court cited *People* v. *Wilson* (1964) 224 Cal.App.2d 738, 743 [37 Cal.Rptr. 42].)

The premise of the trial court's ruling—that the language of the charging document and the form of the jury verdict may establish degrees of an offense even if the Legislature has not done so—is erroneous. As we have

---

[12]The segments of the legislative history of the 1986 amendment that are cited in the dissenting opinions reflect that the amendment sought to impose an enhanced punishment for attempted murder proportionate to the culpability of the crime, when the murder that was attempted was willful, deliberate, and premeditated. In our view, the references to "attempted first degree murder" in several of the informal analyses discussing the proposed amendment simply reflect the analysts' use of a shorthand reference to an attempt to commit a murder that, if completed, would constitute first degree murder because it was willful, deliberate, and premeditated. There is nothing in any of the cited analyses suggesting that such shorthand references were intended to reflect a considered legislative decision to create a new crime, as opposed to a new punishment provision.

Indeed, as noted above, by employing the language typically used in sentence enhancements—"[t]he fact that the attempted murder was willful, deliberate, and premeditated murder" must be specifically charged and admitted or found true "by the trier of fact"—the Legislature made clear that it sought to establish a penalty provision, rather than a new crime. The inclusion of this typical enhancement language would have been unnecessary had the Legislature intended to create a new crime of attempted premeditated murder, because a crime must be charged in an accusatory pleading and there would have been no need to specify that the punishment for the crime could be imposed only if the charge was admitted or found true by the trier of fact. Thus, the dissents' proposed reading of the 1986 amendment would render superfluous a substantial portion of that amendment.

explained, the division of a crime into degrees constitutes an exclusively legislative function, and the circumstance that an allegation pertaining to a penalty provision is pleaded within the same paragraph containing the charge of the underlying offense cannot transform that allegation into an element of the offense or otherwise establish degrees of the offense. The opinion in *People* v. *Wilson, supra,* 224 Cal.App.2d 738, relied upon by the trial court, does not support a contrary conclusion. In that case, the appellate court determined, based upon considerations of fairness to the defendant, that it would refer to the accusatory pleadings in two separate proceedings to determine whether the offense charged in one proceeding was necessarily included within the offense charged in another proceeding, within the meaning of section 1023. (224 Cal.App.2d at pp. 742-743.) *Wilson* did not hold, however, that the accusatory pleadings established the elements of the crimes themselves—which were defined by statute—or that the allegations in an accusatory pleading may establish greater or lesser degrees of a crime where the Legislature has not divided the crime into degrees. Furthermore, in *People* v. *Wolcott, supra,* 34 Cal.3d 92, 100-101, this court expressly rejected the notion that sentence enhancement allegations in an accusatory pleading could be considered for the purpose of defining lesser offenses included within the substantive offense charged.

█ Moreover, the purpose of the charging document is to provide the defendant with notice of the offense charged. (§ 952.) The charges thus must contain in substance a statement that the accused has committed some public offense, and may be phrased in the words of the enactment describing the offense or in any other words sufficient to afford notice to the accused of the offense charged, so that he or she may have a reasonable opportunity to prepare and present a defense. (See *In re Hess* (1955) 45 Cal.2d 171, 175 [288 P.2d 5]; 4 Witkin & Epstein, Cal. Criminal Law, *op. cit. supra,* Proceedings Before Trial, § 2060, p. 2426; *id.,* § 2061, pp. 2427-2428.)

█ In the present case, count one of the information, designated "Attempted Murder with Premeditation," charged defendant in the language of section 664, subdivision (a), so as to serve sufficiently the purpose of the information, i.e., to apprise defendant that he was accused of the offense of attempted murder as well as the penalty allegation that the attempted murder was willful, deliberate, and premeditated. As noted in part I, *ante,* the trial court instructed the jury (in accordance with CALJIC No. 8.66) on the crime of attempt to commit murder, and separately instructed (in accordance with CALJIC No. 8.67) that, in the event the jury found defendant guilty of attempted murder, it then must determine separately whether the premeditation allegation was true. These instructions clearly defined an attempt to commit murder as a single offense rather than one of degrees, and distinguished the premeditation allegation as separate from, rather than a greater

degree of, the offense of attempted murder. The record does not reflect any objection by defendant to these instructions or to the trial court's subsequent instruction that the jury could find defendant guilty of the offense of attempt to commit murder separately from its consideration of the truth of the premeditation allegation. Under these circumstances, where defendant failed to object at trial to the adequacy of the notice he received, any such objection is deemed waived. (*People* v. *Carbonie* (1975) 48 Cal.App.3d 679, 691 [121 Cal.Rptr. 831].)

 For the foregoing reasons, we conclude that the jury's verdict finding defendant guilty of attempted murder did not constitute an acquittal of a greater degree of that offense, and does not bar on double jeopardy grounds a retrial of the separate penalty allegation that the murder attempted was willful, deliberate, and premeditated.

## VI

The judgment of the Court of Appeal, reversing the trial court's dismissal of the penalty allegation and remanding the case for reinstatement of that allegation, is affirmed.

Lucas, C. J., Arabian, J., Baxter, J., and Werdegar, J., concurred.

**MOSK, J.**—I dissent.

Defendant was charged with the crime of willful, deliberate, and premeditated attempted murder, in violation of Penal Code sections 664, 187, subdivision (a), and 189. After trial, the jury returned a verdict finding him guilty of simple "attempted murder." It failed to reach a verdict on willful, deliberate, and premeditated attempted murder.

The trial court declared a mistrial and ordered a retrial on the charge of willful, deliberate, and premeditated attempted murder. Defendant filed a "Motion for Post-Trial Application for the Court to Strike Premeditation Charge." He contended that, in failing to reach a verdict on premeditated attempted murder, the jury had impliedly acquitted him of that crime; instead, it found him guilty of the lesser included offense of second degree attempted murder. Retrial was, therefore, precluded under the double jeopardy clause of the Fifth Amendment to the United States Constitution. The trial court granted the motion "on the basis the trial court judge allowed the jury to arrive at a guilty verdict for attempted murder for Count 1 without finding defendant not guilty of attempted premeditated murder." Defendant was sentenced to a term of 17 years, 8 months, in state prison.

The Court of Appeal reversed the order barring retrial. It reasoned that the offense of attempted murder is not divided into degrees; instead, Penal Code section 664, subdivision (a) (hereafter section 664(a)) provides for an *enhancement* of the punishment for attempted murder when it is willful, deliberate, and premeditated. The enhancement charge could be retried without violating double jeopardy. The majority affirm.

I would reverse. The jury, in effect, convicted defendant of the crime of *second degree attempted murder*. Retrial for the crime of willful, deliberate, and premeditated *first degree attempted murder* is, accordingly, barred under principles of double jeopardy.

The division of a crime into degrees constitutes an exclusively legislative function. (*People* v. *Dillon* (1983) 34 Cal.3d 441, 477-478 [194 Cal.Rptr. 390, 668 P.2d 697] (plur. opn. by Mosk, J.); see *id.* at p. 489 (conc. opn. of Reynoso, J.).) The Legislature plainly exercised that function in enacting Penal Code section 664, former subdivision 4 (currently Penal Code section 664, subdivision (d), hereafter section 664(d)), which requires that "[i]f a crime is divided into degrees, an attempt to commit the crime may be of any of those degrees . . . ."

Nothing in the wording or the legislative history of section 664(a) justifies the creation of a judicial exception to section 664(d) for the crime of attempted murder. As discussed below, I conclude that section 664(a) does not create an "enhancement" or enhancement-like "penalty provision" for the crime of simple attempted murder. Instead, it establishes a different base sentence for the *separate substantive crime* of premeditated attempted murder, i.e., the crime of first degree attempted murder that is "willful, deliberate, and premeditated." As in the case of the parallel statute for the crime of murder, Penal Code section 189, what is required is a *necessary element* of the offense, not a circumstance separate from the underlying offense.

## I.

Section 664(d) provides: "If a crime is divided into degrees, an attempt to commit the crime may be of any of those degrees, and the punishment for the attempt shall be determined as provided by this section." Penal Code section 189 provides that the crime of murder is distinguished into two degrees: "All murder which is perpetrated by means of a destructive device or explosive, knowing use of ammunition designed primarily to penetrate metal or armor, poison, lying in wait, torture, or by any other kind of willful, deliberate, and premeditated killing, or which is committed in the perpetration of, or attempt to perpetrate, arson, rape, carjacking, robbery, burglary,

mayhem, kidnapping, train wrecking, or any act punishable under Section 286, 288, 288a, or 289, or any murder which is perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person outside of the vehicle with the intent to inflict death, is murder of the first degree. All other kinds of murders are of the second degree."

It is plain, therefore, that section 664(d) provides for two degrees of attempted murder. Just as willful, deliberate, and premeditated murder constitutes one form of murder of the first degree, so, therefore, the attempt to commit willful, deliberate, and premeditated murder constitutes one form of attempted murder of the first degree.

Section 664(a) says nothing to the contrary. It provides: "If the offense so attempted is punishable by imprisonment in the state prison, the person guilty of that attempt is punishable by imprisonment in the state prison for one-half the term of imprisonment prescribed upon a conviction of the offense so attempted; provided, however, that if the crime attempted is willful, deliberate, and premeditated murder, as defined in Section 189, the person guilty of that attempt shall be punishable by imprisonment in the state prison for life with the possibility of parole; provided, further, that if the crime attempted is any other one in which the maximum sentence is life imprisonment or death the person guilty of the attempt shall be punishable by imprisonment in the state prison for term of five, seven, or nine years. The additional term provided in this section for attempted willful, deliberate, and premeditated murder shall not be imposed unless the fact that the attempted murder was willful, deliberate, and premeditated is charged in the accusatory pleading and admitted or found to be true by the trier of fact."

Thus, under section 664(a), the usual rule is that crimes of attempt are punishable by one-half the determinate term of years prescribed for the crime attempted, or, if the crime attempted is punishable by death or life imprisonment, by a term of five, seven, or nine years. If, however, the crime attempted is willful, deliberate, and premeditated murder, the punishment is not a term of years, but, instead, an indeterminate term of life imprisonment with the possibility of parole. That punishment is not *added to* anything; instead, it *supplants* the usual term of years imposed for the crime of attempted first or second degree murder. It *is* the base punishment for the crime of premeditated attempted murder.

Section 664(a) does not eliminate degrees of attempted murder directly or indirectly: nowhere in section 664(a) does it state that there are no degrees of attempted murder, or that attempted murder is excepted from the general terms of section 664(d). Moreover, nothing about the imposition of a specific punishment for willful, deliberate, and premeditated attempted murder

is inconsistent with the existence of degrees of attempted murder. Thus, by analogy, the Legislature has provided, in Penal Code section 190, that the punishment for second degree murder is "confinement in the state prison for a term of 15 years to life." (Pen. Code, § 190, subd. (a).) It has, however, imposed a different punishment for two forms of the crime of second degree murder: if the victim was a peace officer, "the person [guilty] shall not be released prior to serving 25 years confinement" (*id.*, subd. (b)); if the killing was perpetrated by means of shooting a firearm from a motor vehicle, the person guilty "shall suffer confinement in the state prison for a term of 20 years to life" (*id.*, subd. (c)). It has not thereby eliminated—or added to—the degrees of the crime of murder.[1]

Section 664(a) requires, in addition, that the punishment provided for willful, deliberate, and premeditated attempted murder "shall not be imposed unless the fact that the attempted murder was willful, deliberate, and premeditated is charged in the accusatory pleading and admitted or found to be true by the trier of fact." The purpose of the pleading and proof requirement is obvious. A verdict of guilt for the crime of attempted murder in the first degree can be based on a theory that does not involve the mental state of willfulness, deliberation, and premeditation. Accordingly, before the trial court can impose the specific punishment under section 664(a) for *willful, deliberate, and premeditated* attempted murder of the first degree, there must be a specific finding by the trier of fact that the crime was committed with that mental state. Similarly, a defendant is entitled to notice that he has been charged under a theory of first degree attempted murder that may subject him to a more severe penalty.[2]

## II.

Notwithstanding the plain language of section 664(d), the majority conclude that the Legislature did not intend to create degrees of attempted murder; it merely intended to provide for an enhanced sentence when the attempt is willful, deliberate, and premeditated. The legislative history shows otherwise.

Section 664, as enacted in 1872, provided in relevant part: "Every person who attempts to commit any crime, but fails, or is prevented or intercepted

---

[1] In 1994, the Legislature likewise amended section 664 to add section (e)(1), raising the punishment for attempted murder of a peace officer or firefighter, whether of the first or second degree, to a term of imprisonment in the state prison for life with the possibility of parole.

[2] The majority assert that the requirement of pleading and proof would be "superfluous" if there were such a crime as "attempted premeditated murder" because such crime would have to be charged in the accusatory pleading. (Maj. opn., *ante*, at p. 669, fn. 12.) They are incorrect: there is no requirement that a *theory* of attempted first degree murder—including that it was willful, deliberate, and premeditated—be charged in the accusatory pleading.

in the perpetration thereof, is punishable, where no provision is made by law for the punishment of such attempts as follows: [¶] 1. If the offense so attempted is punishable by imprisonment in the State Prison for five years, or more, or by imprisonment in a County Jail, the person guilty of such attempt is punishable by imprisonment in the State Prison, or in a County Jail, as the case may be, for a term not exceeding one half of the longest term of imprisonment prescribed upon a conviction of the offense so attempted."

At that time, separate provision was made for the crime of attempted murder: i.e., attempt to kill by poison was punishable by imprisonment in state prison for not less than 10 years (Pen. Code of 1872, § 216). There appear to be no cases applying section 664 as originally enacted to the crime of attempted murder.

In 1923, section 664 was amended to provide expressly for the crime of attempted murder: "[I]f the crime attempted is murder, robbery, crime against nature or lewd and lascivious conduct the person guilty of such attempt shall be punishable by imprisonment in the state prison for a term not more than twenty years." (Stats. 1923, ch. 295, § 1, p. 625.) Although the crime of murder was divided into degrees (Pen. Code, § 189), the attempt statute does not provide for degrees of attempted murder.[3] (Cf. *In re Huson* (1932) 126 Cal.App. 571, 573 [14 P.2d 845] ["Evidently the legislature deliberately refrained from distinguishing between robbery of the first and robbery of the second degree, in fixing the penalty for an attempt to commit this offense. . . . The statutes of California establish no degrees of the crime of attempted robbery."]; *People* v. *Arguero* (1931) 113 Cal.App. 424, 427 [298 P. 520] ["It is possible that the legislature may not have acted consistently in failing to distinguish, so far as punishment is concerned, between attempts to commit robbery in the first and second degrees. The determination of such a question is a legislative and not a judicial function."].)

In 1953, section 664 was again amended, this time deleting specific reference to the crime of attempted murder. Under the amended provision, "if the crime attempted is one in which there is no maximum sentence set by law or in which the maximum sentence is life imprisonment or death the person guilty of such attempt shall be punishable by imprisonment . . . for a term of not more than 20 years." (Stats. 1953, ch. 713, § 1, p. 1983.) Under the Indeterminate Sentence Law, based on the penalties for murder, first and second degree attempted murder bore the same penalty.

---

[3] The 1923 amendment was passed, at least in part, in response to cases attempting to determine the appropriate sentence under section 664 for a crime punishable by an indeterminate sentence of life imprisonment. (See *People* v. *Sama* (1922) 189 Cal. 153 [207 P. 893] [holding that imposition of a punishment of one-half of a sentence of life imprisonment for the crime of attempted robbery would be invalid].)

On that ground, in *People* v. *Wein* (1977) 69 Cal.App.3d 79, 93 [137 Cal.Rptr. 814], the Court of Appeal concluded that there were no degrees of attempted murder: "[T]he punishment for attempted murder is imprisonment for 1 to 20 years regardless of whether the murder attempted would have been, if completed, either first or second degree. The crime of attempted murder is not divided into degrees."

Under the reasoning in *Wein*, however, a change in the penalties for first and second degree murder might require a different conclusion. Such a change was effected by passage of the Determinate Sentencing Act of 1976, effective in July 1977. Under the new determinate sentencing provisions, the crime of attempted murder was subject to different penalties, depending on the degree of murder attempted: the punishment for first degree attempted murder was five, six, or seven years; the punishment for second degree attempted murder was two and one-half, three, or three and one-half years.

Shortly thereafter, the Legislature enacted section 664, subdivision 4, which provided: "If a crime is divided into degrees, an attempt to commit the crime may be of any such degree, and the punishment for such an attempt shall be determined as provided by this section; *except that the crime of attempted murder of the second degree* shall be punishable by imprisonment in the state prison for a term of three, four, or five years." (Stats. 1978, ch. 1166, § 1, pp. 3770-3771, italics added.)[4]

The legislative history reveals, among other things, that the Legislature intended to clarify *existing* law, specifically concerning the penalties for different degrees of attempted murder, and to eliminate any confusion based on the holding in *People* v. *Wein, supra,* 69 Cal.App.3d 79. The Legislative Counsel's Digest for the amendment explains: "Under existing law . . . attempted first degree murder is punishable by 5, 6, or 7 years under provisions generally applicable to attempts . . . [and] attempted second degree murder is punishable by one-half the term applicable to completed second degree murder . . . . [¶] This [bill] would specifically make attempted second degree murder punishable by 3, 4, or 5 years in prison and would further specify that if any crime is divided into degrees, an attempt to commit the crime may be of any such degree." (Legis. Counsel's Dig., Assem. Bill No. 2355, 4 Stats. 1978 (Reg. Sess.) Summary Dig., p. 323.)

An analysis by the Senate Committee on Judiciary described the purpose as "to increase the punishment applicable to attempted second degree murder, and to clarify existing law." (Sen. Com. on Judiciary, Analysis of

---

[4]The final clause of section 664, subdivision 4, establishing a greater sentence for the crime of second degree attempted murder, did not become effective. (See Stats. 1978, ch. 1166, § 9, p. 3772.) Consequently, the punishment for second degree attempted murder, as for all other crimes of attempt, was "one-half the term of imprisonment prescribed upon conviction of the offense so attempted."

Assem. Bill No. 2355 (1977-1978 Reg. Sess.) as amended Mar. 27, 1978, p. 1.) It explains that "[t]here is some confusion surrounding the applicability of the attempt statute ([Pen. Code, §] 644) to attempted murder convictions. . . . [¶] . . . [A]mbiguity stems from the fact that while murder itself is divided into degrees, the crime of attempted murder is *not* divided into degrees. *People* v. *Wein* 69 Cal.App.3d 79 [137 Cal.Rptr. 814] at 93 (1977)." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2355 (1977-1978 Reg. Sess.) as amended Mar. 27, 1978, p. 2.) Similarly, an analysis prepared by the Assembly Committee on Criminal Justice described the effect of the amendment as follows: "[The amendment] would specifically create the special crimes of attempted first degree murder and attempted second degree murder." (Assem. Com. on Crim. Justice, Analysis of Assem. Bill No. 2355 (1977-1978 Reg. Sess.) Mar. 27, 1978, p. 1.)

The Judicial Council of California, in a report to the Senate Committee on Judiciary, the Assembly Criminal Justice Committee, and the Office of the Governor, explained that the amendment would "[i]ncrease the penalty for attempted murder (2nd degree)" and "[r]eiterate the penalty for attempted murder (1st degree)." (Rep. Judicial Council of Cal., Review and Analysis of Assem. Bill No. 2355 (1977-1978 Reg. Sess.) as introduced Jan. 26, 1978 (Mar. 3, 1978) p. 2.) Another analysis, prepared by the Senate Committee on Judiciary providing "Background Information" on the proposed amendment describes the purpose of the bill as follows: 'The bill attempts to stiffen the penalty for second degree murder and to establish a new category of first degree attempted murder." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2355 (Reg. Sess. 1977-1978) as introduced Jan. 26, 1978, p. 1.)

An enrolled bill report prepared by the California Department of Legal Affairs states: "[E]xisting law does not specifically provide for an attempt to commit a crime ([Pen. Code,] § 664) to be of any degree. [¶] [Assembly Bill No.] 2355 amends existing law to specifically provide that an attempt to commit a crime may be of any such degree and the punishment for such an attempt shall be determined by existing law. This bill also amends related sections of the Penal Code to require the court and jury to make findings as to the degree of the attempted offense." (Governor's Ofc., Dept. Legal Affairs, Enrolled Bill Rep. on Assem. Bill No. 2355 (1977-1978 Reg. Sess.) Sept. 20, 1978, p. 2.)

The California Department of Corrections summarized the history of the bill: "The author [of the bill] introduced the measure at the request of a Ventura County Superior Court official who seeks to increase the penalty for attempted second degree murder. The sponsor says some courts have necessarily found defendants guilty of an attempted killing during the course of a

robbery . . . and imposed, pursuant to Section 664 [Penal Code], one/half of second degree murder penalties . . . because there is no statutory provision for charging attempted murder by specified degrees. . . ." (Cal. Dept. Corrections, Health & Welf. Agency, Enrolled Bill Rep. on Assem. Bill No. 2355 (1977-1978 Reg. Sess.) Sept. 12, 1978, p. 1.)

The amendments to section 664 were approved by the Legislature and sent to the Governor for signature. In a letter to the Governor, the bill's sponsor explained the purpose of the amendments to section 664: "This legislation is another technical change that has been necessitated by the Determinate Sentencing Act. Under the prior law, there was no need to distinguish between degrees of murder when the crime charged was 'attempt'. Attempted murder was punished by a long indeterminate range that covered all factual contingencies. [¶] Under current law attempted first degree murder is punishable by 5, 6, or 7 years . . . and attempted second degree murder would be punished by half of the second degree murder sentence . . . . The problem arises from decisional law which states that attempt of a crime that is divided by degrees shall be of the *lowest* degree. [*People* v. *Wein* (1977) 69 Cal.App.3d 79 (137 Cal.Rptr. 814)]. Thus, under the *Wein* rationale, attempted first degree murder can be punished only as an attempted second degree murder. [¶] The purpose of [Assembly Bill No.] 2355 is to rectify this problem by specifically authorizing the trier of fact to find that an attempted crime is of a higher degree. . . . [Assembly Bill No.] 2355 will prevent confusion in the courts over the issue of attempts of crimes divided by degrees." (Letter to Governor Edmund G. Brown from State Assemblyman Charles R. Imbrecht, 36th Dist. (Sept. 8, 1978) p. 1.)

As of the time the legislation was signed and enacted into law, then, the punishments for first and second degree attempted murder were distinct.

Subsequently, in November 1978, Proposition 7 was passed by the electorate. It changed the terms for first and second degree murder and, indirectly, those for attempted murder. First degree murder became punishable by 25 years to life imprisonment, while second degree murder became punishable by 15 years to life imprisonment. All crimes of attempted murder, whether of the first or second degree murder, were punishable under section 644(a) by terms of five, seven, or nine years.[5]

In *People* v. *Macias* (1982) 137 Cal.App.3d 465 [187 Cal.Rptr. 100], the Court of Appeal squarely addressed the question whether, after Proposition

---

[5]As one court observed: "The effect of Proposition 7 in making all degrees of attempted murder punishable in the same way was not readily apparent from a reading of the initiative." (*People* v. *Flores* (1986) 178 Cal.App.3d 74, 84 [223 Cal.Rptr. 465].) "The initiative addresses only the crime of murder and the punishments assigned to a murder conviction. No mention is made of the crime of attempted murder." (*Ibid.*)

7, attempted murder is distinguished into degrees. It held that the crime is not so divided. Adopting the reasoning of *Wein*, it concluded: "[S]ince the punishment for attempted murder is five, seven or nine years, regardless of whether the murder attempted was of the first or second degree, the crime of attempted murder is not in fact divided into degrees." (*Id.* at pp. 471-472.)

In 1986, the Legislature again amended section 664. Presuming that it did so in light of *Macias*, I believe that the amendments demonstrate the legislative intent to supersede that case by establishing different penalties for and, accordingly, *different degrees* of attempted murder. By creating a different base term for attempted premeditated murder, the Legislature acted to undercut the sole premise of *Macias*—that when there are no differences in punishment, there are no degrees of attempted murder. At the same time, although the Legislature made a number of amendments to section 664, it did not amend subdivision (d) expressly to exclude attempted murder. Section 664(d) continued, on its face, to apply to the crime of murder.

The Legislative materials accompanying the 1986 amendment also do not refer to the punishment for premeditated attempted murder as an "enhancement" or as a "penalty provision." Instead, the materials repeatedly refer to two degrees of attempted murder which constitute *separate substantive crimes.*

Thus, a report by the California Department of Corrections observes that the bill "would apply to only attempted first degree murder." (Cal. Dept. Corrections, Enrolled Bill Rep. on Sen. Bill No. 1668 (1985-1986 Reg. Sess.) July 16, 1986, p. 1.) An analysis by the California Department of Finance, likewise, explains that the proposed legislation "would apply only to attempted first degree murder." (Cal. Dept. Finance, Enrolled Bill Rep. on Sen. Bill No. 1668 (1985-1986 Reg. Sess.) as amended Mar. 18, 1986 (Apr. 2, 1986) p. 2.) It also refers to the sentence for attempted premeditated murder as the base sentence, to which "enhancements" might be added: "[T]he sentence received would be life with possibility of parole (ISL term) for the attempted willful, deliberate, and premeditated murder plus any other current law penalties (e.g. for subordinate DSL offenses and/or enhancements.)" (*Ibid.*)

Similarly, a bill analysis by the Senate Committee on Judiciary stated: "[This bill] would cover those crimes that, if completed, could be charged as first degree murder . . . . [¶] As drafted with respect to the attempted murder provision, this bill appears to be restricted to murder 1. Such an interpretation would mean that an attempt fitting the elements that would establish murder 2 would be covered by the existing punishment scheme of

5, 7, or 9 years." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1668 (1985-1986 Reg. Sess.) as amended Mar. 6, 1986, p. 4.)[6]

## III.

The majority conclude that there are no degrees of attempted murder because "as of the operative date of the 1978 amendment [which added section 664(d)] section 664 prescribed the identical punishment for attempted murder regardless whether the murder attempted was of the first or second degree." (Maj. opn., *ante*, at p. 663.) Not so. As discussed, the Legislature added section 664(d) in order to clarify that there are degrees of attempted murder, which were, at the time the amendment was enacted, subject to different punishments. The subsequent enactment of Proposition 7 did not annul the legislative intent or merge the two crimes.

The majority also conclude that there are no degrees of attempted murder because "at the time of the 1986 amendment to section 664, it was recognized generally that the crime of attempted murder was not divided into degrees." (Maj. opn., *ante*, at p. 665.) They advert specifically to *People v. Macias, supra*, 137 Cal.App.3d 465, as a principal case in point. (Maj. opn., *ante*, at pp. 663-664.)[7]

Again, the majority are incorrect. As discussed, the Legislature intended by its 1978 amendments not to codify, but, rather, to supersede *Macias* by eliminating its predicate—i.e., that the punishment for attempted murder was

---

[6]The majority conclude that the references to "attempted first degree murder" in the legislative history of the 1986 amendment were not intended to reflect a legislative decision to create a new crime, but merely constituted "shorthand" descriptions of attempted murder that was willful, deliberate, and premeditated. (Maj. opn., *ante*, at p. 669, fn. 12.) Their premise is unsound: the 1986 amendment did not purport—or need—to create a "new" crime of attempted first degree murder precisely because two degrees of murder already existed, by virtue of the 1978 amendments to section 664. Nor is there any support for the majority's assertion that the repeated references to degrees of attempted murder in the 1986 legislative analyses did not mean precisely what they said.

[7]In fact, although *Macias* was sometimes cited, it was not consistently followed by the Courts of Appeal. In *People v. Koontz* (1984) 162 Cal.App.3d 491 [208 Cal.Rptr. 519], for example, the Court of Appeal recognized that there are degrees of attempted murder, concluding that "[t]here is but one instance where attempted murder is not a lesser included offense of the aggravated assault [under former section 217], namely attempted murder *of the first degree*." (*Id.* at p. 497, italics added.) The majority also state that, after *People v. Guerra* (1985) 40 Cal.3d 377 [220 Cal.Rptr. 374, 708 P.2d 1252], the "standard jury instructions on attempted murder have not distinguished between purported degrees of attempted murder . . . ." (Maj. opn., *ante*, at p. 664.) The case law reveals, however, that trial courts continued to craft instructions referring to attempted murder in the first or second degree. (See, e.g., *People v. Cooper* (1991) 53 Cal.3d 771, 832 [281 Cal.Rptr. 90, 809 P.2d 865]; *People v. Dominguez* (1992) 4 Cal.App.4th 516, 523, fn. 10 [6 Cal.Rptr.2d 55].)

the same regardless of degree—and by expressly providing, under section 664(d), that whenever a crime is divided into degrees, an attempt to commit the crime may be of any of those degrees.

The majority also conclude that there are no degrees of attempted murder because the 1986 amendments to section 664(a) only added a different punishment for one kind of first degree murder: "first degree murder under section 189 encompasses more categories of murder than those that are 'willful, deliberate, and premeditated.'" (Maj. opn., *ante*, at p. 668.) As discussed, the Legislature added section 664, subdivision 4, in 1978, in order to clarify the existing law, i.e., that there are degrees of attempt corresponding to the degrees of the crime attempted. In its 1986 amendments to section 664(a), the Legislature did not purport to "establish a higher degree of murder." (Maj. opn., *ante*, at p. 668.) There was no need to do so. Two degrees of attempted murder already existed. Instead, it merely enacted a higher punishment for one form of first degree attempted murder.

The majority also conclude that there are no degrees of attempted murder because such was the conclusion of the Court of Appeal in *People* v. *Douglas* (1990) 220 Cal.App.3d 544 [269 Cal.Rptr. 579]. (Maj. opn., *ante*, at pp. 666-667.) In my view, *Douglas* is wrong.

In *Douglas*, the Court of Appeal conceded that "the continued validity of the holdings of the *Wein* and *Macias* cases, that the crime of attempted murder is not divided into degrees, can be questioned, since the Legislature amended section 664, subdivision 1 in 1986." (*People* v. *Douglas*, *supra*, 220 Cal.App.3d at p. 548.) It nonetheless concluded that the provision should be construed narrowly: "[We] do not find degrees of attempted murder where the Legislature has not expressly provided for same." (*Id.* at p. 549.) It erred thereby. There is no support for the conclusion that the Legislature must expressly provide for degrees of the crime of attempted murder or any other specific crime of attempt. That is because section 664(d) provides that *whenever* an offense is divided into degrees, an attempt to commit the offense is also so divided.

Moreover, the result in *Douglas* is based on an erroneous premise: that the degrees of the crime of attempted murder merged when the penalties became the same after passage of Proposition 7. As discussed, such a conclusion is inconsistent with the language of section 664(d) and the legislative intent that attempted murder be divided into degrees.[8]

---

[8] The Court of Appeal in *People* v. *Jones* (1991) 234 Cal.App.3d 1303, 1311-1312 [286 Cal.Rptr. 163], although expressing doubt concerning the result in *Douglas*, was "disinclined

## IV.

The majority effectively construe section 664(a) as merely creating an enhancement for the crime of attempted murder when it is willful, deliberate, and premeditated. Their construction is unsound.[9]

The words "enhancement" or "penalty provision" do not appear in section 664(a) or in the legislative history. Nor is the punishment for attempted willful, deliberate, and premeditated murder listed as an "enhancement" under Penal Code section 1170.1, subdivision (f). There is also no provision for "special circumstances" for the crime of attempted murder, as there is for the crime of murder. (Pen. Code, § 190.4.)

The majority point to the phrase "additional term" in the final sentence of section 664(a). They conclude that because section 664(a) uses "language typically employed in describing sentence enhancements," the punishment for an attempt that is willful, deliberate, and premeditated must be a "penalty provision." (Maj. opn., *ante*, at p. 667.) Their premise—that the phrase "additional term" is always synonymous with "enhancement" or "penalty provision"—is incorrect.

In *Hernandez*, we explained that "language referring to 'an additional term' . . . is . . . consistent with other enhancement statutes." (*People* v. *Hernandez*, *supra*, 46 Cal.3d at p. 207.) Subsequently, *Rayford* observed: "When, as in this case, the statute neither uses the language 'an additional term' nor 'enhancement,' . . . we have no basis on which to characterize it

---

to take issue with *Douglas* in the face of our Supreme Court's recent approving reference to *Douglas* in the *Cooper* opinion [citation]." Our dictum in *Cooper* was as follows: "Although the actual verdict form stated the attempted murder was of the first degree, 'the crime of attempted murder is not in fact divided into degrees,' at least at the time of this crime. (*People* v. *Macias* (1982) 137 Cal.App.3d 465, 472 [187 Cal.Rptr. 100]; see *People* v. *Douglas* (1990) 220 Cal.App.3d 544, 548-550 [269 Cal.Rptr. 579] [regarding the law today].).)" (*People* v. *Cooper*, *supra*, 53 Cal.3d at p. 832.) I would disapprove the dictum to the extent it can be understood to state that *Douglas* represented the law in 1991 or now.

[9]An enhancement is "an additional term of imprisonment *added to the base term*." (Cal. Rules of Court, rule 405(c), italics added; *People* v. *Hernandez* (1988) 46 Cal.3d 194, 207 [249 Cal.Rptr. 850, 757 P.2d 1013]; *People* v. *Rayford* (1994) 9 Cal.4th 1, 9 [36 Cal.Rptr.2d 317, 884 P.2d 1369].) The majority concede that section 664(a) does not "strictly speaking" create an enhancement, because it does not add a term of imprisonment to an existing base term. (Maj. opn., *ante*, at p. 656, fn. 2.) Indeed, the term of life imprisonment with possibility of parole for the crime of attempted premeditated murder is not *added to* any term; it *is* the term. The majority reach the same result, however, by merely substituting the more general phrase "penalty provision" for the word "enhancement." (*Ibid.*) Thus, they conclude that section 664(a) creates a "penalty provision" that establishes a greater term of imprisonment— albeit an increased *base* term, as opposed to an additional term of imprisonment added to a base term—upon "a finding of specified circumstances." (Maj. opn., *ante*, at p. 656, fn. 2.) They are still wrong.

as an enhancement." (*People* v. *Rayford, supra,* 9 Cal.4th at pp. 9-10.) Neither *Hernandez* nor *Rayford* suggests, however, that it is invariably the case that whenever the Legislature uses the phrase it intends to create an "enhancement" or other "penalty provision"; the phrase "additional term" is not a term of art.

What matters, then, is not whether the words "in addition" or "additional term" appear in the statute, but whether the statute provides for a greater punishment upon a finding of specified circumstances *that do not amount to necessary elements of the crime itself.*

As discussed, under section 664(d), if any crime is divided into degrees, an attempt to commit that crime is also divided into degrees. Murder is divided into degrees. Hence, attempted murder is so divided. As in the case of first degree murder, one form of first degree attempted murder includes the necessary element that it was "willful, deliberate, and premeditated." Just as Penal Code section 190, subdivision (a) provides for a heightened penalty for one form of the general crime of second degree murder, section 664(a) provides for a heightened penalty for one form of attempted first degree murder. To that extent only, the majority correctly conclude that it is a "penalty provision."

For the foregoing reasons the trial court properly found defendant guilty of second degree attempted murder and retrial barred by the double jeopardy clause of the Constitution. Thus I would reverse the judgment of the Court of Appeal.

**KENNARD, J.,** Dissenting.—Penal Code section 664 sets forth the law in this state governing attempts to commit a crime. It provides that "if the crime attempted is willful, deliberate, and premeditated murder . . . the person guilty of that attempt shall be punishable by imprisonment in the state prison for life with the possibility of parole . . . ." The issue here is this: Is "attempted . . . willful, deliberate, and premeditated murder" a crime that is separate and distinct from the crime of attempted murder?

The majority holds that there is only a single crime of attempted murder, and that whether the attempted murder was willful, deliberate, and premeditated is merely a circumstance affecting the penalty available for that crime. In the majority's view, the language of Penal Code section 664 quoted above is nothing more than a "penalty provision," not the description of a distinct crime. By reaching this conclusion, the majority avoids the double jeopardy prohibitions of the federal and state Constitutions, paving the way for the prosecution to again try defendant for the attempted willful, deliberate, and

premeditated murder of Paul Kain, even though defendant has already been convicted of attempting to murder Kain.

Unlike the majority, I am of the view that attempted willful, deliberate, and premeditated murder is a crime rather than a mere "penalty provision." This conclusion finds support in pertinent legislative history, principles of statutory construction, and previous decisions of this court.

I

On June 6, 1992, San Diego Deputy Sheriff Paul Kain pulled over defendant's car because its brake lights were defective. When Deputy Kain approached the driver's side of defendant's car, defendant fired six shots with a .357 magnum handgun, hitting Kain in the waist, abdomen, and leg.

The prosecution filed an information charging defendant with "attempted murder with premeditation," alleging that he "did willfully, deliberately, and premeditatedly attempt to murder" Deputy Kain. At trial, the jury was asked to determine whether defendant had attempted to murder Kain and, if so, whether "the crime attempted was willful, deliberate, and premeditated murder." During deliberations, the jury sent the trial court a note asking if it could return a verdict on attempted murder if it could not agree as to whether the attempt was willful, deliberate, and premeditated. The court told the jury it could not do so. Later, however, the court reversed itself, telling the jury: "[Y]ou may make a finding of guilty or not guilty as to the attempted murder charge and consider separately whether you can resolve the question of premeditation . . . ." Thereafter, the jury convicted defendant of attempted murder; the jury told the court that it could not decide whether the murder was willful, deliberate, and premeditated. The trial court declared a mistrial on the latter portion of the charge, and scheduled it for retrial.

Defendant then entered a plea of once in jeopardy. He argued that at his first trial he had already been placed in jeopardy for the crime of attempted willful, deliberate, and premeditated murder, and that the constitutional prohibition against double jeopardy barred a retrial for that crime because at the first trial the jury had convicted him of the lesser included offense of attempted murder. The trial court agreed, and imposed a sentence for attempted murder. The Attorney General appealed. The Court of Appeal reversed, holding that attempted willful, deliberate, and premeditated murder was simply a sentence enhancement to the crime of attempted murder, and that therefore the double jeopardy bar was inapplicable.

II

Under the federal and the state Constitutions, a criminal defendant may not be tried twice for the same offense. (U.S. Const., 5th Amend.; Cal.

Const., art. I, § 15.) This constitutional guarantee is deeply ingrained in American legal traditions. (*Benton* v. *Maryland* (1969) 395 U.S. 784, 796 [23 L.Ed.2d 707, 717, 89 S.Ct. 2056].) "Its origins can be traced to Greek and Roman times, and it became established in the common law of England long before this Nation's independence"; it has been a part of American jurisprudence since the founding of this nation. (*Id.* at p. 795 [23 L.Ed.2d at p. 716], fn. omitted.)

Although the double jeopardy clause is commonly viewed as a rule barring successive prosecutions for the same crime (*North Carolina* v. *Pearce* (1969) 395 U.S. 711, 717 [23 L.Ed.2d 656, 664-665, 89 S.Ct. 2072]), it also bars a prosecution for a greater offense after the defendant has been convicted of a lesser included offense (*Brown* v. *Ohio* (1977) 432 U.S. 161, 169 [53 L.Ed.2d 187, 196, 97 S.Ct. 2221]; *People* v. *Greer* (1947) 30 Cal.2d 589, 597 [184 P.2d 512]). As to the latter aspect, the United States Supreme Court made the following observation in 1889: "[W]here . . . a person has been tried and convicted for a crime which has various incidents included in it, he cannot be a second time tried for one of those incidents without being twice put in jeopardy for the same offence." (*Ex parte Nielsen* (1889) 131 U.S. 176, 188 [33 L.Ed. 118, 122, 9 S.Ct. 672].)

Central to the determination whether in this case retrial would violate the double jeopardy bar is this question: Is attempted premeditated murder[1] a crime, or is it, as the majority holds, merely a "penalty provision." If attempted premeditated murder is a crime, the jury's verdict convicting defendant of attempted murder, which is a less serious offense included in that crime, bars the prosecution from retrying defendant for attempted premeditated murder. If, on the other hand, attempted premeditated murder is not a crime but merely a "penalty provision," then the constitutional double jeopardy provisions are inapplicable, and the defendant may be retried on the allegation that his attempt to murder Deputy Kain was premeditated.

### III

To determine whether attempted premeditated murder is a crime, I begin by examining the two statutes governing attempts to commit a crime, Penal Code sections 21a and 664.[2]

Section 21a provides: "An attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission."

---

[1]For convenience, I shall use the term "attempted premeditated murder" to describe attempted willful, deliberate, and premeditated murder.

[2]All subsequent statutory references are to the Penal Code.

Section 664, which has several subdivisions, has this introductory clause: "Every person who attempts to commit any crime, but fails, or is prevented or intercepted in the perpetration thereof, is punishable, where no provision is made by law for the punishment of such attempts, as follows: . . . ." What follows are four subdivisions. Subdivision (a) states that an attempt to commit a felony is punishable by imprisonment for one-half the term of imprisonment prescribed for the commission of the completed offense, with two exceptions. "[I]f the crime attempted is willful, deliberate, and premeditated murder, as defined in Section 189," the defendant is subject to imprisonment for life with the possibility of parole. "[I]f the crime attempted is any other one in which the maximum sentence is life imprisonment or death," the prescribed punishment is five, seven, or nine years in prison. Subdivision (b) sets forth the penalties for an attempt to commit misdemeanors punishable by imprisonment in the county jail, while subdivision (c) mentions the penalties for an attempt to commit an offense punishable only by a fine. Subdivision (d) pertains to offenses that are divided into degrees, stating that "an attempt to commit the crime may be any of those degrees, and the punishment for the attempt shall be determined as provided by this section."[3]

---

[3]Prior to its most recent amendment, section 664 (as amended by Stats. 1986, ch. 519, § 2, p. 1859) stated:

"Every person who attempts to commit any crime, but fails, or is prevented or intercepted in the perpetration thereof, is punishable, where no provision is made by law for the punishment of such attempts, as follows:

"1. If the offense so attempted is punishable by imprisonment in the state prison, the person guilty of such attempt is punishable by imprisonment in the state prison for one-half the term of imprisonment prescribed upon a conviction of the offense so attempted; provided, however, that if the crime attempted is willful, deliberate, and premeditated murder, as defined in Section 189, the person guilty of that attempt shall be punishable by imprisonment in the state prison for life with the possibility of parole; provided, further, that if the crime attempted is any other one in which the maximum sentence is life imprisonment or death the person guilty of the attempt shall be punishable by imprisonment in the state prison for a term of five, seven, or nine years. The additional term provided in this section for attempted willful, deliberate, and premeditated murder shall not be imposed unless the fact that the attempted murder was willful, deliberate, and premeditated is charged in the accusatory pleading and admitted or found to be true by the trier of fact.

"2. If the offense so attempted is punishable by imprisonment in a county jail, the person guilty of such attempt is punishable by imprisonment in a county jail for a term not exceeding one-half the term of imprisonment prescribed upon a conviction of the offense so attempted.

"3. If the offense so attempted is punishable by a fine, the offender convicted of that attempt is punishable by a fine not exceeding one-half the largest fine which may be imposed upon a conviction of the offense so attempted.

"4. If a crime is divided into degrees, an attempt to commit the crime may be of any such degree, and the punishment for the attempt shall be determined as provided by this section."

In 1994, the Legislature replaced the subdivision numbers with letters and added subdivision (e), which prescribes penalties for attempted murder of a peace officer or firefighter. (Stats. 1994, ch. 793, § 1.)

By virtue of sections 21a and 664, there is for every crime listed in the Penal Code (and for every crime contained in other California codes as well) a separate offense, namely, the attempt to commit that crime. The elements of each attempted crime are closely related, but not identical, to those of the corresponding completed offense: to be guilty of an attempt, a defendant must harbor the specific intent to accomplish all elements of the completed offense, and must perform a direct but ineffectual act in furtherance of that crime. (1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Elements of Crime, § 143, p. 160.)

The following example illustrates the effect of these statutes. While trying to break into a house to steal property inside, a man sets off a burglar alarm. Frightened, he leaves without entering the residence. Absent section 664, he would have committed no crime. Under section 664, however, he is subject to prosecution for the crime of *attempted* burglary, as defined by section 21a (setting forth the elements of an attempt) and by section 459 (setting forth the elements of burglary).

In this case, defendant was charged with attempted murder. Murder, which is defined as "the unlawful killing of a human being, or a fetus, with malice aforethought" (§ 187), is divided into degrees. First degree murder is murder perpetrated in the course of certain statutorily enumerated felonies, or murder committed "by means of a destructive device or explosive, knowing use of ammunition designed primarily to penetrate metal or armor, poison, lying in wait, torture, or by *any other kind of willful, deliberate, and premeditated killing*"; all other murder is of the second degree. (§ 189, italics added.)

The jury convicted defendant of an attempt to commit murder. Simple attempted murder is, in essence, attempted *second degree murder*, that is, attempted murder not falling in any of the categories that are set forth in section 189 and that elevate murder from the second to the first degree. The prosecution now proposes to try defendant for an attempt to commit "willful, deliberate, and premeditated murder, as defined in section 189." In my view, it may not do so. This is why: Section 189 defines willful, deliberate, and premeditated murder as murder of the *first degree*. The prosecution now seeks to put defendant on trial for the crime of attempted *first degree* murder, after he has already been convicted of the *lesser included* crime of *attempted second degree* murder. This would, for the reasons given in part II, *ante*, violate the federal and state constitutional prohibitions against double jeopardy.

The majority, however, concludes otherwise. In its view, attempted first degree murder is not a crime. It points out that between 1978 and 1986,

attempted first degree murder and attempted second degree murder each carried a determinate sentence of five, seven, or nine years in prison. Because of the identical penalty, the majority notes, the Court of Appeal in *People* v. *Macias* (1982) 137 Cal.App.3d 465, 471-472 [187 Cal.Rptr. 100] held that attempted murder was not divided into degrees, but constituted just one crime. Nearly 10 years later, in *People* v. *Cooper* (1991) 53 Cal.3d 771, 832 [281 Cal.Rptr. 90, 809 P.2d 865] this court cited *Macias* with approval.

The majority relies on *People* v. *Macias, supra,* 137 Cal.App.3d 465, in concluding that attempted murder is not divided into degrees. This reliance is misplaced. The rationale underlying the Court of Appeal's holding in *Macias* was undercut in 1986, when the Legislature amended section 664 to provide that "if the crime attempted is willful, deliberate, and premeditated murder, as defined in Section 189," the penalty is life imprisonment. By prescribing a greater penalty for this type of first degree murder, the Legislature's 1986 amendment of section 664 eliminated the factual basis for the holding in *Macias* that, because attempted first degree murder and attempted second degree murder each carried the same penalty of five, seven, or nine years in prison, the crime of attempted murder was not divided into degrees.

Nevertheless, the majority insists that attempted first degree murder is not a crime. The majority asserts that the 1986 amendment to section 664 did nothing more than create a "penalty provision" to section 664. Therefore, the majority concludes, the increased punishment does not trigger the double jeopardy bar.

The majority's reasoning is analytically unsound. True, the statutory language contained in the 1986 amendment to section 664 ("if the crime attempted is willful, deliberate, and premeditated murder, as defined in Section 189, the person guilty of that attempt shall be punishable by imprisonment in the state prison for life with the possibility of parole") can be described as a "penalty provision," in that it establishes the penalty for attempted premeditated murder. But section 664 also prescribes the penalty for an attempt to commit every crime set forth in the Penal Code. If the statutory language I just quoted were purely a penalty provision, then section 664 is nothing more than a series of penalty provisions. If so, no attempt to commit a crime can ever be a criminal offense. But that is not the case. In addition to prescribing penalties for attempted crimes, section 664 provides that an attempt to commit any crime is itself a crime. Thus, like any other attempt to commit a criminal offense, an attempt to commit first degree murder is, by virtue of section 664, a crime.

Further support for this conclusion can be found in the legislative history of the 1986 amendment of section 664. As explained in a Senate Judiciary

Committee analysis of Senate Bill No. 1668, 1985-1986 Regular Session (the bill proposing the amendment): "This bill will make the *crime* of attempted 'willful, deliberate, and premeditated murder' punishable by life in prison with the possibility of parole. Thus, it would cover those crimes that if completed, could be charged as first degree murder . . . ." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1668 (1985-1986 Reg. Sess.) as amended Mar. 6, 1986, p. 4, italics added.) Similarly, a report from the Judicial Council stated, "Each of the bills [referring to Senate Bill No. 1668 and another bill] would change the penalty for attempted murder in the first degree" (Judicial Council of Cal., Rep. on Sen. Bill No. 1668 and Assem. Bill No. 3139 (1985-1986 Reg. Sess.) Mar. 21, 1986, p. 2), concluding that the bill was "a reasonable adjustment to keep the penalty for this *crime* proportionate to related crimes." (*Id.* at p. 5, italics added.) And the Legislative Analyst stated in the analysis of Senate Bill No. 1668: "The bill would make the *crime* of attempted willful, deliberate, and premeditated murder, as defined, punishable by life imprisonment with the possibility of parole." (Legis. Analyst, Analysis of Senate Bill No. 1668 (1985-1986 Reg. Sess.) as amended Apr. 1, 1986, p. 2.) Thus, the legislative history of the 1986 amendment to section 664 shows that the Legislature considered attempted premeditated murder a crime, not just a penalty provision.

To bolster its conclusion that attempted premeditated murder is not a crime but only a penalty provision, the majority finds significance in the fact that, in its words, "first degree murder under section 189 encompasses more categories of murder than those that are 'willful, deliberate, and premeditated.'" This, according to the majority, indicates that "the 1986 amendment does not provide a greater punishment for *any* attempt to commit first degree murder, but only for attempts to commit those first degree murders that are willful, deliberate, and premeditated." (Maj. opn., *ante*, at p. 668.) Consequently, the majority states, the 1986 amendment of section 664 did not divide the crime of attempted murder into degrees.

The legislative history of the 1986 amendment to section 664 belies the majority's assertion that the Legislature's failure to explicitly mention in the amendment all categories of first degree murder somehow establishes the Legislature's view that there is no crime of attempted first degree murder. As the Judicial Council, in a review of the amendment prepared for the Senate Judiciary Committee, explained, the amendatory legislation "would change the present penalty for attempted murder in the first degree." (Judicial Council of Cal., Rep. on Sen. Bill No. 1668 and Assem. Bill No. 3139 (1985-1986 Reg. Sess.) Mar. 21, 1986, p. 2.) Similarly, an analysis prepared by the Department of Corrections stated, "This provision would apply to only attempted first degree murder," (Cal. Dept. Corrections, Enrolled Bill

Rep. on Sen. Bill No. 1668 (1985-1986 Reg. Sess.) July 16, 1986, p. 1), and a Senate Judiciary Committee Comment analyzing Senate Bill No. 1668 commented that the bill "would cover those crimes that if completed, could be charged as first degree murder" (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1668, *supra*, p. 4). These comments demonstrate the Legislature's understanding that attempted first degree murder is indeed a distinct crime, and that the 1986 amendment to section 664 had the sole purpose of increasing the penalty for that crime.

The Legislature is not alone in viewing attempted premeditated or first degree murder as a crime. In recent years, this court has often expressed the same understanding in its decisions. In *People* v. *King* (1993) 5 Cal.4th 59, 65 [19 Cal.Rptr.2d 233, 851 P.2d 27], for example, after referring to "attempted 'willful, deliberate, and premeditated' murder" and to "first degree murder," we stated that the defendant had "committed both of these *crimes*." (Italics added; see also *In re Serrano* (1995) 10 Cal.4th 447, 451 [41 Cal.Rptr.2d 695, 895 P.2d 936] [referring to a conviction and sentence "for willful, deliberate and premeditated attempted murder"]; *People* v. *Masterson* (1994) 8 Cal.4th 965, 967 [35 Cal.Rptr.2d 679, 884 P.2d 136] [stating that the defendant was "charged by complaint with attempted premeditated murder"]; *Dix* v. *Superior Court* (1991) 53 Cal.3d 442, 462, fn. 14 [279 Cal.Rptr. 834, 807 P.2d 1063] [referring to "[s]everal crimes, including . . . attempted wilful and premeditated murder"].) Thus, the majority's holding today—that there is no crime of attempted premeditated murder, but only the crime of attempted murder, and that the existence of premeditation and deliberation is merely a circumstance affecting the penalty for that crime—is not only a rejection of the most natural reading of the statutory language and the most compelling inference to be drawn from its legislative history, but also a repudiation of this court's past statements on this point.

## IV

As set forth above, the majority's holding that there is no crime of attempted premeditated murder, and that premeditation is merely a circumstance affecting the penalty for attempted murder, is analytically unsound. In addition, as I shall explain, this holding erodes the right of a criminal defendant to trial by jury.

Under the Sixth Amendment to the federal Constitution, made applicable to state proceedings through the Fourteenth Amendment, a defendant in a criminal case has a constitutional right to trial by jury on every element of the charged offense or offenses. (*United States* v. *Gaudin* (1995) __ U.S. __, __ [132 L.Ed.2d 444, 449, 115 S.Ct. 2310, 2313].) The United States

Supreme Court has held, however, that this right generally does not extend to "sentencing considerations" (*McMillan* v. *Pennsylvania* (1986) 477 U.S. 79, 93 [91 L.Ed.2d 67, 81, 106 S.Ct. 2411]), and this court has concluded that factual issues raised by "penalty provisions" are mere "sentencing considerations" as to which a defendant has no right to jury trial under the federal Constitution (*People* v. *Wims* (1995) 10 Cal.4th 293, 305-309 [41 Cal.Rptr.2d 241, 895 P.2d 77]). Thus, the majority's holding that section 664's reference to attempted premeditated murder is merely a penalty provision apparently means that a defendant charged with an attempted murder that is "willful, deliberate, and premeditated" will have no constitutional right to a jury trial on the issues of willfulness, deliberation, and premeditation. I say "apparently means" because the majority never addresses the effect of its holding on a defendant's right to jury trial under the federal Constitution.

If the majority's holding does mean that there is no constitutional right to jury trial on the issue of premeditation, it produces this anomaly: As to completed murders, premeditation is an element of the crime of first degree murder and therefore subject to the constitutional right of jury trial; as to attempted murders, however, premeditation is merely a penalty consideration and therefore not subject to the constitutional right of jury trial. In this case, for example, had Deputy Kain died of the wounds defendant inflicted, and had the prosecution charged defendant with murder, the issue of premeditation would have been an element of the charged offense of murder in the first degree, and defendant therefore would have had a constitutional right to a jury trial on that issue. (*United States* v. *Gaudin*, supra, __ U.S. __, __ [132 L.Ed.2d 444, 454, 115 S.Ct. 2310, 2317].) Yet because Kain did not die and defendant was charged with attempted premeditated murder (and because the majority concludes that premeditation is a mere penalty consideration in this context), defendant apparently has no constitutional right to a jury trial on the very same issue of premeditation. This incongruity provides yet another reason to reject the majority's construction of the statutory language.

The majority's abrogation of the *constitutional* right to a jury trial on the issue of premeditation is partly alleviated by the Legislature's provision of a *statutory* right of jury trial. Under section 664, the punishment prescribed for attempted premeditated murder "shall not be imposed unless the fact that the attempted murder was willful, deliberate, and premeditated is charged in the accusatory pleading and admitted or found to be true by the trier of fact." But this statutory right of jury trial cannot fully compensate for the loss of the constitutional right. For one thing, error in the denial of a statutory right of jury trial is assessed using the ordinary, state law harmless error standard

rather than the stricter standard required for violations of federal constitutional rights. (See, e.g., *People* v. *Wims, supra,* 10 Cal.4th 293, 314-315.) Moreover, what the Legislature has given the Legislature may also take away: A right to jury trial that is merely statutory may be revoked at any time by ordinary legislative action.

All of this assumes, of course, that the federal Constitution does not guarantee a right to jury trial on premeditation if premeditation is merely a circumstance affecting the penalty for attempted murder rather than an element of the crime of attempted premeditated murder. This assumption may not be justified.

In *McMillan* v. *Pennsylvania, supra,* 477 U.S. 79, the United States Supreme Court stated that state legislatures do not have "unbridled power to redefine crimes to the detriment of criminal defendants" (*id.* at p. 86 [91 L.Ed.2d at pp. 76-77]), and the court suggested that a state legislature might lack power to remove a factual issue from the jury's consideration by defining the issue as a mere "sentencing consideration" (or, in the language of the majority, by placing the issue in a mere "penalty provision") if a finding on that issue would expose the defendant to substantially "greater or additional punishment" (*id.* at p. 88 [91 L.Ed.2d at pp. 77-78]). Here, a finding that in attempting to commit murder a defendant acted with premeditation will expose the defendant to a penalty of life imprisonment, as compared with a maximum term of nine years for attempted murder without premeditation. Because of the grave sentencing consequences attending a finding of premeditation, it may well be unconstitutional to deprive the defendant of a right to jury trial on the issue of premeditation. (See *People* v. *Wims, supra,* 10 Cal.4th 293, 324 (conc. and dis. opn. of Kennard, J.).) For this reason also, I would not construe the language of section 664 imposing the penalty of life imprisonment for attempted premeditated murder as a mere penalty provision, but instead would construe that language as both defining a separate crime and specifying the punishment for that crime. (See *Welfare Rights Organization* v. *Crisan* (1983) 33 Cal.3d 766, 772 [190 Cal.Rptr. 919, 661 P.2d 1073, 31 A.L.R.4th 1214] [stating that "courts are to construe statutes in a manner which avoids constitutional difficulties"].)

To safeguard the constitutional right to jury trial on an issue that may determine whether a defendant will be incarcerated for life, and in accordance with the apparent intent of the Legislature, I conclude that under section 664 there is a crime of attempted premeditated murder, that premeditation is an element of this crime, and that a defendant charged with attempted premeditated murder has a constitutional right to a jury trial on the issue of premeditation.

## CONCLUSION

I would reverse the judgment of the Court of Appeal.