56 Cal.Rptr.3d 240 (2007)
148 Cal.App.4th 889
Anthony PORTER, Petitioner,
v.
The SUPERIOR COURT of Monterey County, Respondent, The People, Real Party in Interest.
No. H029884.
Court of Appeal of California, Sixth District.
March 20, 2007.
*242 Glenn A Nolte, Public Defender, and Romano Clark, Deputy Public Defender, for Petitioner.
No Appearance for Respondent.
Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Sr. Assistant Attorney General, Seth K. Schalit and William Kuimelis, Deputy Attorneys General, for Real Party In Interest.
*241 ELIA, J.
Petitioner Anthony Porter, the criminal defendant in the underlying prosecution for attempted murder and other felonies arising from a drive-by shooting, filed a petition for writ of mandate to compel respondent superior court to vacate its order denying petitioner's motion to dismiss this action on double jeopardy grounds and to enter a different order granting the motion or for a writ of mandate *243 granting other appropriate relief. Petitioner Porter seeks to avoid further trial on the premeditation and gang enhancement allegations. We issued an order to show cause. The People, the real party in interest, filed a return.
The question before us is whether the prosecution may retry premeditation allegations and gang enhancement allegations on which the trial court granted a new trial after the jury had convicted petitioner as charged. Petitioner argues that double jeopardy bars further trial and Apprendi v. New Jersey (2000) 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 precludes trial on only discrete elements of greater offenses.
We take judicial notice of relevant court records. (Evid.Code, § 452, subd. (d).) In the underlying case, the jury specifically found him guilty of two counts of attempted murder (counts one and two) (Pen.Code, §§ 187, subd. (a), 664)[1] and it found that the attempted murders were willful, deliberate, and premeditated (§ 664, subd. (a)), found petitioner had personally and intentionally discharged a firearm in the commission of those attempted murders (§ 12022.53, subd. (c)), and found the gang enhancements true as to both counts (§ 186.22, subd. (b)(1)). The jury also found petitioner guilty of shooting at an inhabited dwelling (§ 246) (count three), two counts of assault with a semi-automatic firearm (§ 245, subd. (b)) (counts four and five), carrying a loaded firearm while not the registered owner (§ 12031, subd. (a)(2)(F)) (count six), and shooting from a motor vehicle at a person (§ 12034, subd. (c)) (count seven). It found the gang enhancement (§ 186.22, subd. (b)(1)) alleged as to each of these five offenses also to be true. In addition, the jury found true as to counts four and five that petitioner personally used a firearm (§ 12022.5, subd. (a)).
After granting a new trial on the premeditation and gang enhancement allegations, the trial court announced that the People would be permitted to set a new trial date on those enhancements. It then sentenced petitioner and entered a judgment of conviction on the remaining guilty verdicts and true findings. Petitioner subsequently filed pleas of former judgment of conviction and once in jeopardy and sought to demur and asked the court to dismiss the action. The court rejected petitioner's arguments and agreed that a trial on the allegations should be set. This court stayed the criminal trial until further order of this court.

A. Federal Constitution's Double Jeopardy Clause

The People assert that the double jeopardy clause does not bar retrial of the premeditation and gang enhancement allegations because the trial court's grant of a new trial was not an implied acquittal and petitioner Porter waived any double jeopardy claim by requesting a new trial. As we will discuss, we agree that the trial court's order granting a new trial was not an implied acquittal. The People, however, address only one of the three protections encompassed by the double jeopardy clause.
The Fifth Amendment provides: "No person shall ... be subject for the same offence to be twice put in jeopardy of life or limb..." This protection is enforceable against the States through the Fourteenth Amendment. (Benton v. Maryland (1969) 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707.) The federal constitutional protection against double jeopardy "affords a defendant three basic protections: *244 `"[It] protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense."` Brown v. Ohio, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977), quoting North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969)." (Ohio v. Johnson (1984) 467 U.S. 493, 498, 104 S.Ct. 2536, 81 L.Ed.2d 425.)

1. Acquittal

A jury's verdict of acquittal, no matter how erroneous, is accorded absolute finality. (See Burks v. U.S. (1978) 437 U.S. 1,16, 98 S.Ct. 2141, 57 L.Ed.2d 1; see also Dowling v. U.S. (1990) 493 U.S. 342, 355, 110 S.Ct. 668, 107 L.Ed.2d 708; Bullington v. Missouri (1981) 451 U.S. 430, 445, 101 S.Ct. 1852, 68 L.Ed.2d 270.) "[T]he law attaches particular significance to an acquittal. To permit a second trial after an acquittal, however mistaken the acquittal may have been, would present an unacceptably high risk that the Government, with its vastly superior resources, might wear down the defendant so that 'even though innocent, he may be found guilty.' Green, 355 U.S., at 188, 78 S.Ct., at 223." (U.S: v. Scott (1978) 437 U.S. 82, 91, 98 S.Ct. 2187, 57 L.Ed.2d 65.) "[A] verdict of acquittal, although not followed by any judgment, is a bar to a subsequent prosecution for the same offense. [Citations.]" (Ball v. U.S. (1896) 163 U.S. 662, 671, 16 S.Ct. 1192, 41 L.Ed. 300.) "[T]he Double Jeopardy Clause of the Fifth Amendment prohibits reexamination of a court-decreed acquittal to the same extent it prohibits reexamination of an acquittal by jury verdict. See Richardson v. United States, 468 U.S. 317, 325, n. 5, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984); Sanabria v. United States, 437 U.S. 54, 64, n. 18, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978); United States v. Martin Linen Supply Co., 430 U.S. 564, 573, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977); United States v. Sisson, 399 U.S. 267, 290, 90 S.Ct. 2117, 26 L.Ed.2d 608 (1970)." (Smith v. Massachusetts (2005) 543 U.S. at pp. 462, 467, 125 S.Ct. 1129,160 L.Ed.2d 914.)
Petitioner argues that the trial court's grant of his motion for a new trial was tantamount to an acquittal and the prohibition against double jeopardy absolutely bars further prosecution. We reach a contrary conclusion.
Under California law, a trial court reviewing a motion for a new trial is "guided by a presumption in favor of the correctness of the verdict and proceedings supporting it. (People v. Martin (1970) 2 Cal.3d 822, 832[, 87 Cal.Rptr. 709, 471 P.2d 29]....)" (People v. Davis (1995) 10 Cal.4th 463, 524, 41 Cal.Rptr.2d 826, 896 P.2d 119.) "The trial court `should [not] disregard the verdict ... but instead ... should consider the proper weight to be accorded to the evidence and then decide whether or not, in its opinion, there is sufficient credible evidence to support the verdict.' (People v. Robarge (1953) 41 Cal.2d 628, 633[, 262 P.2d 14]....)" (Ibid.)
"In considering a motion for a new trial made on the ground of insufficiency of the evidence to support the verdict, the trial court independently weighs the evidence, in effect acting as a `13th juror.' If the trial court, sitting as a `13th juror,' would have decided the case differently from the other 12 jurors and grants the motion for a new trial, there is no double jeopardy bar to retrial. (People v. Veitch, supra, 128 Cal.App.3d at pp. 467-468[, 180 Cal.Rptr. 412].)" (People v. Lagunas (1994) 8 Cal.4th 1030, 1038, fn. 6, 36 Cal. Rptr.2d 67, 884 P.2d 1015.)
*245 On the other hand, "[d]ouble jeopardy does bar retrial, however, when a court, using the `substantial evidence' test, determines as a matter of law that the prosecution failed to prove its case. (Hudson v. Louisiana (1981) 450 U.S. 40, 44 [101 S.Ct. 970, 972, 67 L.Ed.2d 30, 34]; People v. Trevino (1985) 39 Cal.3d 667, 694-695[, 217 Cal.Rptr. 652, 704 P.2d 719 ...].) To determine whether substantial evidence supports a verdict, the court reviews 'the whole record in the light most favorable to the judgment' and decides 'whether it discloses substantial evidence ... such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' (People v. Johnson (1980) 26 Cal.3d 557, 578[, 162 Cal.Rptr. 431, 606 P.2d 738]....)" (People v. Lagunas, supra, 8 Cal.4th at p. 1038, fn. 6, 36 Cal.Rptr.2d 67, 884 P.2d 1015.) "The `substantial evidence' test is used ... by trial courts when ruling on a section 1118.1 motion for judgment of acquittal. (See People v. Trevino, supra, 39 Cal.3d 667, 694-695, 217 Cal.Rptr. 652, 704 P.2d 719.)" (Ibid.) "In California, if a criminal defendant in a jury trial wishes to challenge the legal sufficiency of the evidence in the trial court, he must move for a judgment of acquittal under section 1118.1. Such a judgment is a bar to any other prosecution for the same offense. (§ 1118.2.)" (People v. Veitch (1982) 128 Cal.App.3d 460, 466, 180 Cal.Rptr. 412.)
In this case, the trial court expressed its understanding that, in ruling on a motion for a new trial, "[t]he trial judge must independently determine whether there is sufficient credible evidence to support the verdicts" and "[t]he trial judge does not review the jury's determination" but "instead weighs the evidence and exercises an independent judgment." The trial court's discussion of the evidence in ruling on the motion was consistent with an independent weighing of the evidence as prescribed by California law. (See People v. Davis, supra, 10 Cal.4th at p. 523, 41 Cal.Rptr.2d 826, 896 P.2d 119 ["In reviewing a motion for a new trial, the trial court must weigh the evidence independently]".)
After finding sufficient credible evidence to prove attempted murder, the court stated: "It is a closer question in my mind as to whether or not there was sufficient, credible evidence of premeditation and deliberation to make these offenses attempted, willful, premeditated and deliberated murder." The trial court found that the evidence of petitioner's extreme intoxication indicated a lack of premeditation and deliberation. The court explained: "The strongest evidence in my mind of premeditation is the fact that the car either went up and down the street twice or three times, I think as described by one of the women on the porch.... And that certainly one could certainly draw the conclusion from that that the occupants of the car, Mr. Porter and Mr. Williams, were considering what they were doing and going to do in driving up and down the street. So I acknowledge that evidence. But on balance, given the really uncontroverted evidence of the defendant's extreme intoxication in the hours preceding the shooting, I cannot find that there was sufficient evidence that he had the ability to weigh the decision to kill or not kill the people on the porch, the two or three women who were on the porch.... [¶] Further, as I've said, even though the strongest evidence of the premeditation of the act was the driving back and forth, it is the evidence in the case that Mr. Porter was actually not the driver of the car. Mr. Williams was the driver of the car."
As to the gang enhancements, the trial court found that the evidence that the "Krazy Ass Pimps" (KAP) gang was an ongoing organization was "weak." The court found that Officer Sargent's testimony *246 regarding the pattern of criminal gang activity was "not particularly strong." The court found it significant that no gang enhancements had been charged in regard to crimes committed by persons possibly members of KAP and the evidence appeared to her to be merely "[e]vidence of occasional crimes committed by the persons who could be defined as members ... at least up until the year 2000." The court concluded that "the evidence of any cohesive gang activity after the year 2000 is lacking."
The court acknowledged that Probation Officer Kevin Christian had testified that "a Marina police officer told him a year and a half ago that Mr. Porter was jumped into KAP" but the court found his testimony to be Very, very vague." It found the evidence "weak" because Christian was not sure if the police officer he had named was actually present at the incident and Christian himself did not know details concerning the incident. The court acknowledged the evidence that petitioner had been friends with identified gang members when he was a young man, 14 and younger, but found "no evidence that he was ever involved with any of them in participating in any crime." The court further found no evidence that the shooting was committed at the direction of the KAP gang, no evidence that there was any plan to retaliate or any directions given to Mr. Porter or Mr. Williams to commit a shooting in retaliation, no evidence the offense was in association with a gang, and no evidence that Mr. Porter or Mr. Williams was of a member of the KAP gang. In addition, the court; stated that there was "no credible evidence that the shooting would have benefitted ... the KAP gang" since "neither Mr. Williams nor Mr. Porter would be identified by members of the community as a member of KAP." The court noted the stipulation, that the shooting of Albert Johnson, whose funeral preceded the shooting, could not be shown to be gang related, "very much weakened the notion that the shooting at DeShawn Lee's house was in retaliation for a gang offense." For the same reasons, the trial court did not find "any sufficient evidence" to establish that "the crimes were committed with the specific intent to promote, further or assist in any criminal conduct by gang members."
After the trial court's ruling on the motion for a new trial, the prosecution, in order to clarify the record, brought up the trial evidence that petitioner had been wearing a particular shirt and the expert's testimony that the shirt indicated gang membership. The court responded: "[T]hat brings up an issue ... I overlooked addressing was the T-shirt. Because the Court certainly did weigh that evidence in reaching its conclusion. And there was a lot of evidence and a lot of testimony regarding this T-shirt. In my mind, in weighing this evidence, the strongest evidence was that put forward by the young women who had created the T-shirt and who testified that they created a T-shirt as a memorial to Mr. Johnson and something for his friends to wear at the funeral. So that explanation was credible to me, that it was a shirt prepared just for this funeral, to be worn by friends of Mr. Johnson. Not a shirt prepared as gang clothing or worn as gang clothing."
Even though the trial court in the present case discussed the various evidentiary deficiencies it perceived, the record does not establish that the court was applying the substantial evidence test or ruling that the evidence was insufficient as a matter of law. In the context of the evidence at trial and the court's apparent application of the appropriate standard in ruling on defendant's motion for a new trial, we cannot reasonably infer that the court's "no evidence" *247 observations were an implied acquittal.[2]
Petitioner is correct that where a trial judge expressly grants a new trial because the state failed to prove its case as a matter of law, federal double jeopardy protection bars a second prosecution because such a ruling is the equivalent of an acquittal. (Hudson v. Louisiana (1981) 450 U.S. 40, 44-45, 101 S.Ct. 970, 67 L.Ed.2d 30; see Richardson v. U.S., supra, 468 U.S. at p. 326, fn. 5, 104 S.Ct. 3081.) But this case is unlike the situation in Hudson v. Louisiana, supra, 450 U.S. 40, 101 S.Ct. 970 where the defendant moved for a new trial based upon insufficiency of the evidence as a matter of law and the trial judge explicitly granted the motion on that ground. (Id. at pp. 43-44, 101 S.Ct. 970.) In Hudson, the U.S. Supreme Court noted that a motion for a new trial was the only means of challenging the legal sufficiency of the evidence under Louisiana law. (Id. at p. 41, 101 S.Ct. 970.) In contrast, as previously mentioned, California law has a different statutory mechanism that allows trial courts to acquit for legal insufficiency of the evidence.[3] (See §§ 1118 [at the close of the prosecution's evidence in a court trial], 1118.1 [before the case is submitted to the jury in a jury trial]; 1118.2.) "A court reviewing the verdict under section 1181 [motion for new trial] has no authority to acquit the defendant expressly, impliedly or inadvertently." (People v. Serrato (1973) 9 Cal.3d 753, 762, 109 Cal.Rptr. 65, 512 P.2d 289.)
The "policies [behind double jeopardy protection] do not have the same force when a judge disagrees with a jury's resolution of conflicting evidence and concludes that a guilty verdict is against the weight *248 of the evidence. See Hudson v. Louisiana, 450 U.S. 40, 44-45, n. 5,101 S.Ct. 970, 972-973, n. 5, 67 L.Ed.2d 30 (1981)." (Tibbs v. Florida. (1982) 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.) The United States Supreme Court observed in Hudson: "Whether a state trial judge in a jury trial may assess evidence as a `13th juror' is a question of state law. [Citations.] ... Burks precludes retrial where the State has failed as a matter of law to prove its case despite a fair opportunity to do so. [Citation.] By definition, a new trial ordered by a trial judge acting as a `13th juror' is not such a case." (Hudson v. Louisiana, supra, 450 U.S. at p. 44, fn. 5, 101 S.Ct. 970; see Tibbs v. Florida, supra, 457 U.S. at p. 42, 102 S.Ct. 2211 ["an appellate court's disagreement with the jurors' weighing of the evidence does not require the special deference accorded verdicts of acquittal"].)
A trial court's order granting a motion for a new trial should not be construed as. an acquittal unless the record unmistakably indicates the trial court applied the substantial evidence test and concluded that no reasonable trier of fact could find guilt beyond a reasonable doubt. (Cf. People v. Hatch (2000) 22 Cal.4th 260, 92 Cal.Rptr.2d 80, 991 P.2d 165, [a dismissal pursuant to section 1385 was not an implied acquittal absent an affirmative showing in the record that trial court had applied substantial evidence test].) There has been no such affirmative showing in this case.

2. Conviction of Lesser Offense

In addition to protecting against a second prosecution after acquittal, the double jeopardy clause protects against further prosecution for the same offense after conviction. (Brown v. Ohio (1977) 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187.) In that situation, the federal double jeopardy clause prohibits "attempts to secure additional punishment after a prior conviction and sentence [citations]." (Id. at p. 166, 97 S.Ct. 2221.) Although the People correctly assert that the grant of a new trial was not an implied acquittal, the People fail to discuss the prior conviction aspect of double jeopardy protection. They merely assert that petitioner waived any double jeopardy claim by requesting a new trial.
In Brown v. Ohio, supra, 432 U.S. 161, 165-166, 97 S.Ct. 2221, 53 L.Ed.2d 187, the U.S. Supreme Court concluded that the "same offense" test established by Blockburger v. United States (1932) 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 to determine whether convictions obtained in a single trial may be subject to multiple punishment also applied to the determination whether there could be further prosecution. In Blockburger, the court had stated: "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not. Gavieres v. United States, 220 U.S. 338, 342, 31 S.Ct. 421, 55 L.Ed. 489, and authorities cited." (Blockburger v. U.S., supra, 284 U.S. at p. 304, 52 S.Ct. 180.) In Brown v. Ohio, the court concluded: "If two offenses are the same under this [Blockburger] test for purposes of barring consecutive sentences at a single trial, they necessarily will be the same for purposes of barring successive prosecutions. See In re Nielsen, 131 U.S. 176, 187-188, 9 S.Ct. 672, 675-676, 33 L.Ed. 118 (1889); cf. Gavieres v. United States, 220 U.S. 338, 31 S.Ct. 421, 55 L.Ed. 489 (1911). Where the judge is forbidden to impose cumulative punishment for two crimes at the end of a single proceeding, the prosecutor is forbidden to strive for the same result in successive *249 proceedings." (Brown v. Ohio, supra, 432 U.S. at p. 166, 97 S.Ct. 2221.)
"Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 ... established] the general rule that the Double Jeopardy Clause prohibits a State or the Federal Government from trying a defendant for a greater offense after it has convicted him of a lesser included offense. 432 U.S., at 168-169, 97 S.Ct., at 2226-2227." (Jeffers v. U.S. (1977) 432 U.S. 137, 150, 97 S.Ct. 2207, 53 L.Ed.2d 168 (plur.opin.).) "Brown reaffirm[ed] the rule that one convicted of the greater offense may not be subjected to a second prosecution on the lesser offense, since that would be the equivalent of two trials for `the same offense.' 432 U.S., at 168, 97 S.Ct., at 2226. See In re Nielsen, 131 U.S. 176, 187, 9 S.Ct. 672, 675, 33 L.Ed. 118 (1889). Because two offenses are `the same' for double jeopardy purposes unless each requires proof of an additional fact that the other does not, 432 U.S., at 168, 97 S.Ct., at 2226, it follows that the sequence of the two trials for the greater and the lesser offense is immaterial [fn. omitted] and trial on a greater offense after conviction on a lesser ordinarily is just as objectionable under the Double Jeopardy Clause as the reverse order of proceeding. [Fn. omitted.] Cf. Waller v. Florida, 397 U.S., at 390, 90 S.Ct., at 1186." (Id. at pp. 150-151, 97 S.Ct. 2207; see Illinois v. Vitale (1980) 447 U.S. 410, 421, 100 S.Ct. 2260, 65 L.Ed.2d 228.) "Any adjustment in punishment for the fact that the defendant already has been punished for the lesser offense is not adequate to cure the injury suffered because of multiple prosecutions, since the double jeopardy problem inheres in the very fact of a second trial for the `same' offense. See Blackledge v. Perry, 417 U.S. 21, 30-31, 94 S.Ct. 2098, 2103-2104, 40 L.Ed.2d 628 (1974); Price v. Georgia, 398 U.S. 323, 329, 90 S.Ct. 1757, 1761, 26 L.Ed.2d 300 (1970)." (Jeffers v. U.S., supra, 432 U.S. at p. 151, fn. 18, 97 S.Ct. 2207.)
Apprendi v. New Jersey, supra, 530 U.S. at page 494, footnote 19, 120 S.Ct. 2348, has added the understanding that "when the term `sentence enhancement' is used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict." It seems unassailable that, under Apprendi, a statutorily defined offense and that same offense plus one or more allegations increasing punishment, other than the fact of a prior conviction, constitute the "same offense" within the meaning of the Fifth Amendment's double jeopardy clause under the under the Blockburger test. The People have not asserted otherwise.
The prosecution, by attempting to retry petitioner on the challenged allegations following conviction of the charged offenses and the other remaining true findings, is seeking second convictions for the "same offenses," a proceeding ordinarily barred under the due process clause of the federal constitution. The only question is whether any exception applies to this principle.
In Brown v. Ohio (1977) 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187, the U.S. Supreme Court suggested by way of footnote "[a]n exception may exist where the State is unable to proceed on the more serious charge at the outset because the additional facts necessary to sustain that charge have not occurred or have not been discovered despite the exercise of due diligence." (Id. at p. 169, fn. 7, 97 S.Ct. 2221.) A different exception was recognized in Jeffers v. U.S., supra, 432 U.S. 137, 97 S.Ct. 2207. In Jeffers, defendant, who had been convicted in the two separate prosecutions on two separate indictments, asserted that the second prosecution placed him twice in *250 jeopardy because he had already been convicted of lesser included offenses in the first prosecution. (Id. at pp. 145-146, 97 S.Ct. 2207.) A four justice plurality of the U.S. Supreme Court rejected this double jeopardy claim, noting that the Government had affirmatively sought a single trial but the defense had successfully opposed consolidation. (Id. at pp. 142-143, 152, fn. 20, 97 S.Ct. 2207.) The plurality opinion concluded that double jeopardy protection did not apply where a "defendant expressly asks for separate trials on the greater and the lesser offenses, or, in connection with his opposition to trial together, fails to raise the issue that one offense might be a lesser included offense of the other...." (Id. at p. 152, 97 S.Ct. 2207.) The defendant in Jeffers had argued that he had not waived the constitutional guarantee against double jeopardy (id, at pp. 146-147, 97 S.Ct. 2207), but the Supreme Court did not squarely rest its decision on whether or not the defendant had intentionally relinquished a known right (see Johnson v. Zerbst (1938) 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 ["A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege"]) but rather on the "policy behind the Double Jeopardy Clause." (Jeffers, supra, 432 U.S. at p. 152, 97 S.Ct. 2207.) The plurality opinion reasoned: "Both the trial after the appeal and the trial after the mistrial are, in a sense, a second prosecution for the same offense, but, in both situations, the policy behind the Double Jeopardy Clause does not require prohibition of the second trial. Similarly, although a defendant is normally entitled to have charges on a greater and a lesser offense resolved in one proceeding, there is no violation of the Double Jeopardy Clause when hie elects to have the two offenses tried separately and persuades the trial court to honor his election." (Ibid., fn. omitted.) The Jeffers court concluded that the petitioner was "solely responsible for the successive prosecutions" and "his action deprived him of any right that he might have had against consecutive trials." (Id. at p. 154, 97 S.Ct. 2207.)
There has been no affirmative showing in this case that petitioner intentionally relinquished his constitutional right to avoid double jeopardy by bringing a new trial motion but that does not end our inquiry. The U.S. Supreme Court has rejected the "contention that the permissibility of a retrial following a mistrial or a reversal of a conviction on appeal depends on a knowing, voluntary, and intelligent waiver of a constitutional right." (U.S. v. Dinitz (1976) 424 U.S. 600, 609, fn. 11, 96 S.Ct. 1075, 47 L.Ed.2d 267.) In evaluating double jeopardy claims, the court has focused instead on whether any interest protected by the double jeopardy clause has been infringed. (See e.g. Ohio v. Johnson (1984) 467 U.S. 493, 501-502, 104 S.Ct. 2536, 81 L.Ed.2d 425 ["principles of finality and prevention of prosecutorial overreaching" underlying the protection against double jeopardy were not violated by continuing prosecution on the charges remaining after defendant's guilty pleas to lesser included offenses in single prosecution]; U.S. v. Scott (1978) 437 U.S. 82, 100, 98 S.Ct. 2187, 57 L.Ed.2d 65 ["No interest protected by the Double Jeopardy Clause is invaded when the Government is allowed to appeal" the trial court's mistrial grant of defendant's motion to dismiss a count on the ground of preindictment delay]; see also 'U.S. v. Tateo (1964) 377 U.S. 463, 466, 84 S.Ct. 1587, 12 L.Ed.2d 448 ["While different theories have been advanced to support the permissibility of retrial, of greater importance than the conceptual abstractions employed to explain the Ball principle [permitting retrial after reversal of a conviction] are the implications of that *251 principle for the sound administration of Justice"].)
In deciding whether further prosecution offends principles of double jeopardy, we are cognizant of the purposes of the protection. "The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." (Green v. United States (1957) 355 U.S. 184, 187-188, 78 S.Ct. 221, 2 L.Ed.2d 199.) Retrial of a greater offense after a defendant has successfully brought a statutory new trial motion is not the type of governmental oppression or prosecutorial overreaching targeted by the double jeopardy clause. (See U.S. v. Scott, supra, 437 U.S. at p. 91, 98 S.Ct. 2187 ["to require a criminal defendant to stand trial again after he has successfully invoked a statutory right of appeal to upset his first conviction is not an act of governmental oppression of the sort against which the Double Jeopardy Clause was intended to protect"].) As the United States Supreme Court concluded in a different factual context, "the Double Jeopardy Clause, which guards against Government oppression, does not relieve a defendant from the consequences of his voluntary choice." (United States v. Scott, supra, 437 U.S. at p. 99, 98 S.Ct. 2187.)
In this case, the People commenced a single prosecution, not multiple prosecutions, and petitioner was convicted as charged. It was petitioner who created the need for a second trial by bringing a motion for a new trial on the premeditation allegations and gang enhancement allegations. Defense counsel agreed to imposition of sentence on the remaining verdicts and findings. Although conviction of a lesser included offense ordinarily precludes a subsequent trial on the greater offense under the federal double jeopardy clause, there is an argument that further prosecution should not be barred by the judgment of conviction under the circumstances of this case. We need not resolve this issue, however, because we find the further prosecution is barred by section 1023, California's Penal Code provision implementing the double jeopardy protection conferred by our state Constitution, and by Apprendi.[4]

B. Penal Code Section 1023

"Protection against double jeopardy is also embodied in article I, section 15 of the California Constitution, which declares that `[p]ersons may not twice be put in jeopardy for the same offense.' ... [T]he California Constitution is a document of independent force and effect that may be interpreted in a manner more protective of defendants' rights than that extended by the federal Constitution, as construed by the United States Supreme *252 Court. I Citations.]" (People v. Fields (1996) 13 Cal.4th 289, 297-298, 52 Cal.Rptr.2d 282, 914 P.2d 832.) Penal Code section 1023 "implements the protections of the state constitutional prohibition against double jeopardy, and, more specifically, the doctrine of included offenses. [Citations.]" (Id. at pp. 305-306, 52 Cal. Rptr.2d 282, 914 P.2d 832.)
Section 1023 provides: "When the defendant is convicted or acquitted or has been once placed in jeopardy upon an accusatory pleading, the conviction, acquittal, or jeopardy is a bar to another prosecution for the offense charged in such accusatory pleading, or for an attempt to commit the same, or for an offense necessarily included therein, of which he might have been convicted under that accusatory pleading." "Under Penal Code section 1023, as construed in People v. Greer (1947) 30 Cal.2d 589, 596-597 [184 P.2d 512], when an accused is convicted of a lesser included offense, the conviction bars a subsequent prosecution for the greater offense." (People v. Fields, supra, 13 Cal.4th at p. 296, 52 Cal.Rptr.2d 282, 914 P.2d 832, fn. omitted.) This rule applies even where the jury deadlocks on the greater offense and its verdict of guilty on the lesser included offense does not imply intent to acquit the accused of the greater offense. (Id. at pp. 295-296, 305-307, 52 Cal. Rptr.2d 282, 914 P.2d 832.)
In People v. Fields, supra, 13 Cal.4th 289, 52 Cal.Rptr.2d 282, 914 P.2d 832, as in this case, the doctrine of implied acquittal was inapplicable to the greater offense. The California Supreme Court concluded: "[Notwithstanding the jury's deadlock on the greater offense, defendant could not be subjected to retrial on that charge. As we explain, once the verdict of guilty on the lesser included offense was received by the trial court and, recorded, and the jury was discharged, defendant stood convicted of the lesser included offense within the meaning of section 1023. Pursuant to that statute, when an accused is convicted of a lesser included offense, the conviction bars a subsequent prosecution for the greater offense. (People v. Greer (1947) 30 Cal.2d 589, 596-597, 184 P.2d 512.)" (Id. at p. 305, 52 Cal.Rptr.2d 282, 914 P.2d 832.) The court declared that "once a conviction on the lesser offense has been obtained, '"to [later] convict of the greater would be to convict twice of the lesser."` [Citations.]" (Id. at p. 306, 52 Cal.Rptr.2d 282, 914 P.2d 832.)
We find this authority controlling. (Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455, 20 Cal.Rptr. 321, 369 P.2d 937.) Even if the trial court's limited grant of a new trial was not an implied acquittal, California's constitutional protection against double jeopardy as implemented by section 1023 bars further prosecution of the greater offenses and, consequently, precludes further trial of the allegations on which the trial court granted a new trial (see Apprendi v. New Jersey, supra, 530 U.S. At p. 494, fn. 19, 120 S.Ct. 2348).

C. Apprendi

In Apprendi v. New Jersey, supra, 530 U.S. 466, 120 S.Ct. 2348, the United States Supreme Court stated its now familiar holding: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (Id. at p. 490, 120 S.Ct. 2348.) The court made clear that "practice must at least adhere to the basic principles undergirding the requirements of trying to a jury all facts necessary to constitute a statutory offense, and proving those facts beyond reasonable doubt." (Id. at pp. 483-84, 120 S.Ct. 2348.) It *253 recognized that a sentence enhancement, other than a prior conviction allegation, must be treated as an element of a greater offense if it increased punishment beyond the prescribed statutory maximum for a crime. (Id. at p. 494, fn. 19, 120 S.Ct. 2348.)
The court subsequently announced that the "decision in Apprendi v. New Jersey, 530 U.S. 466[, 120 S.Ct. 2348] ..., clarified what constitutes an `element' of an offense for purposes of the Sixth Amendment's jury-trial guarantee." (Sattazahn v. Pennsylvania (2003) 537 U.S. 101, 111, 123 S.Ct. 732, 154 L.Ed.2d 588.) "Put simply, if the existence of any fact (other than a prior conviction) increases the maximum punishment that may be imposed on a defendant, that factno matter how the State labels itconstitutes an element, and must be found by a jury beyond a reasonable doubt. Id., at 482-184, 490, 120 S.Ct. 2348." (Ibid.) The California Supreme Court has likewise recognized that "Apprendi treated the crime together with its sentence enhancement as the 'functional equivalent' of a single `greater' crime." (People v. Sengpadychith (2001) 26 Cal.4th 316, 326, 109 Cal.Rptr.2d 851, 27 P.3d 739.) The U.S. Supreme Court also observed post-Apprendi there is generally "no principled reason to distinguish ... between what constitutes an offense for purposes of the Sixth Amendment's jury-trial guarantee and what constitutes an `offence' for purposes of the Fifth Amendment's Double Jeopardy Clause. Cf. Monge v. California, 524 U.S. 721, 738, 118 S.Ct. 2246, 141 L.Ed.2d 615 (1998) (SCALIA, J., dissenting) (`The fundamental distinction between facts that are elements of a criminal offense and facts that go only to the sentence' not only `delimits the boundaries of important constitutional rights, like the Sixth Amendment right to trial by jury,' but also `provides the foundation for our entire double jeopardy jurisprudence')." (Sattazahn v. Pennsylvania, supra, 537 U.S. at pp. 111-112, 123 S.Ct. 732.)
The idea that a penalty provision or sentence enhancement, such as section 664, subdivision (a), or 186.22, subdivision (b)(1), is separate from the underlying offense and does not set forth an element of a greater offense has been firmly rejected in the wake of Apprendi v. New Jersey, supra, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435. (See People v. Seel (2004) 34 Cal.4th 535, 541, 545, 548-549, 551, 21 Cal.Rptr.3d 179, 100 P.3d 870 [section 664(a), although designated a penalty provision, is an element of an offense for double jeopardy purposes], disapproving People v. Bright (1996) 12 Cal.4th 652, 49 Cal.Rptr.2d 732, 909 P.2d 1354; People v. Sengpadychith, supra, 26 Cal.4th at p. 327, 109 Cal.Rptr.2d 851, 27 P.3d 739 [gang enhancement under section 186.22, subdivision (b)(1), is subject to Apprendi].) Nevertheless, the People now make the astounding assertion that "nothing in Apprendi prohibits retrial of discrete elements of an offense if retrial is by jury using the beyond a reasonable doubt standard." The People's statement is impossible to reconcile with the Sixth Amendment's jury trial guarantee as elucidated by Apprendi and its progeny.
The court recognized in its opinion in Blakely v. Washington (2004) 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 that its commitment to Apprendi reflected "the need to give intelligible content to the right of jury trial." (Id. at p. 305, 124 S.Ct. 2531.) Justice Scalia had stated in his concurring opinion in Apprendi, supra, 530 U.S. 466, 120 S.Ct. 2348, that "the guarantee that `[i]n all criminal prosecutions, the accused shall enjoy the right to trial, by an impartial jury,' has no intelligible content unless it means that all the facts which must exist in order to subject the defendant to a legally prescribed punishment *254 must be found by the jury." (Id. at p. 499, 120 S.Ct. 2348.) The court in U.S. v. Booker (2005) 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 declared: "It has been settled throughout our history that the Constitution protects every criminal defendant `against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.' In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). It is equally clear that the `Constitution gives a criminal defendant the right, to demand that a jury find him guilty of all the elements of the crime with which he is charged.' United States v. Gaudin, 515, U.S. 506, 511, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995)." (Id. at p. 230,125 S.Ct.. 738.)
A defendant's right to a jury trial in a criminal case, guaranteed by the Sixth and Fourteenth Amendments (see Duncan v. Louisiana (1968) 391 U.S. 145, 149, 88 S.Ct. 1444, 20 L.Ed.2d 491), a right recognized as "fundamental to the American scheme of justice" (ibid.), would be eviscerated if the government could obtain a criminal conviction that did not reflect a single jury's determination that all elements of an offense (the statutory offense plus all sentence enhancements and penalty provisions constitutionally required to be tried to a jury) had been proved beyond a reasonable doubt. The People's position would permit a succession of trials on discrete elements of an offense following the grant of a new trial on fewer than all elements until each element had been found true by some jury and a new trial had not been granted.
As Justice Scalia has articulated: "The right to be tried by a jury in criminal cases obviously means the right to have a jury determine whether the defendant has been proved guilty of the crime charged. And since all crimes require proof of more than one element to establish guilt ..., it follows that trial by jury means determination by a jury that ail elements were proved." (Neder v. U.S. (1999) 527 U.S. 1, 31,119 S.Ct. 1827,144 L.Ed.2d 35, concur, and dissent, opn. of Scalia, J.; see Neder v. US., supra, 527 U.S. 1, 12, 119 S.Ct. 1827 [improper instruction on an element of the offense violates the Sixth Amendment's jury trial guarantee].) The prospect of piecemeal jury trials utterly conflicts with the constitutional right to trial by jury and is constitutionally untenable absent a valid waiver by a defendant.
"The question of an effective waiver of a federal constitutional right in a proceeding is of course governed by federal standards." (Boykin v. Alabama (1969) 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274.) "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." (Brady v. U.S. (1970) 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747, fn. omitted.) The record of petitioner's motion for a new trial does not affirmatively show that petitioner, with sufficient awareness of the relevant circumstances, intelligently and voluntarily waived his constitutional right to have a jury determine that all the elements of the greater offenses had been proved beyond a reasonable doubt. (Cf. Brady v. U.S., supra, 397 U.S. at p. 749, 90 S.Ct. 1463 [voluntariness of plea "can be determined only by considering all of the relevant circumstances surrounding it"]; Boykin v. Alabama, supra, 395 U.S. at pp. 242-243, 89 S.Ct. 1709 [a trial court may not accept a guilty plea unless there is "an affirmative showing that it was intelligent and voluntary" and a waiver of the constitutional rights relinquished by such plea "cannot be presumed from a silent record"]; Johnson v. Zerbst, supra, 304 U.S. at p. 464, 58 S.Ct. 1019 ["`courts indulge every reasonable presumption against waiver' of fundamental constitutional *255 rights" and "`do not presume acquiescence in the loss of fundamental rights'" and "[a] waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege"]; see also People v. Howard (1992) 1 Cal.4th 1132, 1175, 5 Cal.Rptr.2d 268, 824 P.2d 1315 ["a plea is valid if the record affirmatively shows that it is voluntary and intelligent under the totality of the circumstances"].) An effective waiver of the right to a jury trial requires "the express and intelligent consent of the defendant." (Patton v. United States (1930) 281 U.S. 276, 312, 50 S.Ct. 253, 74 L.Ed. 854.)
We take judicial notice that petitioner sought the dismissal, not retrial, of the premeditation and gang enhancement allegations in his motion for a new trial. (Evid.Code, § 452, subd. (d).) The trial court chose not to modify "the verdict, finding or judgment" without granting a new trial as it was empowered to do if it concluded petitioner was not guilty as convicted but was guilty of a lesser included crime (§ 1181, subd. 6). Defense counsel's acquiescence in the court's decision to proceed with sentencing on the standing jury verdicts and findings following the court's ruling on the new trial motion does not demonstrate defendant effectively waived his right to a full jury trial on the greater offenses.
Let a peremptory writ of mandate issue directing respondent superior court to enter an order dismissing the premeditation allegations (§ 664, subd. (a)) and the gang enhancement allegations (§ 186.22, subd. (b)). The stay order issued by this court is vacated.
RUSHING, P.J., and PREMO, J., concur.
NOTES
[1] All further statutory references are to the Penal Code unless otherwise stated.
[2] We take judicial notice that there was testimony at trial indicating that the KAP gang had continued to associate as a criminal street gang since its formation in 1997, petitioner was a member of the gang, a gang may retaliate in response to the shooting of a member whether or not the shooter was a member of a rival gang, and retaliation would enhance the gang's reputation that "this gang is not to be targeted or messed with," and, in the opinion of an expert, the shootings in this case were retaliatory and were committed for the benefit of the KAP gang by a gang member. (Evid.Code, § 452, subd. (d).) Furthermore, the enhancement under section 186.22, subdivision (b)(1), applies to "any person" who commits a felony as specified and does not require current or active gang membership. (See In re Ramon T. (1997) 57 Cal. App.4th 201, 206-207, 66 Cal.Rptr.2d 816.) The specific intent requirement in section 186.22, subdivision (b)(1) may be satisfied by a showing that the shooting was intended as a "retaliatory strike" to avenge the shooting of gang member. (See People v. Gamez (1991) 235 Cal.App.3d 957, 978, 286 Cal.Rptr. 894 [expert evidence regarding gang culture], disapproved on another point in People v. Gardeley (1996) 14 Cal.4th 605, 624, fn. 10, 59 Cal.Rptr.2d 356, 927 P.2d 713; see also People v. Ortiz (1997) 57 Cal.App.4th 480, 484, fn. 3, 67 Cal.Rptr.2d 126 [expert testimony that the crime was committed for the benefit of a gang as "pay back" against another gang].)
[3] We take judicial notice that petitioner apparently did bring an unsuccessful motion for a judgment of acquittal before this case was submitted to the jury for decision. (Evid. Code, § 452, subd. (d).) We agree that the court's denial of a previous motion to acquit does not control whether the court's ruling on the motion for a new trial was tantamount to an implied acquittal (see People v. Trevino, supra, 39 Cal.3d 667, 217 Cal.Rptr. 652, 704 P.2d 719 ["inherent contradiction" between denial of motion for an acquittal and a grant of motion for a new trial based on the insufficiency of the evidence as a matter of law did not prevent application of double jeopardy bar]) and the trial judge's belief that there will be a new trial is not conclusive on the issue of double jeopardy (see U.S. v. Scott (1978) 437 U.S. 82, 92, 98 S.Ct. 2187, 57 L.Ed.2d 65). Nevertheless, the trial court's denial of petitioner's motion for an acquittal is consistent with our conclusion that the trial court in ruling on the motion for a new trial was not applying the substantial evidence test.
[4] It is premature for us to address the third strand of double jeopardy protection, the proscription against multiple punishment for the same offense, but we are puzzled how the trial court would lawfully implement the results of any new true findings reached by a jury since it already entered a final judgment of conviction imposing punishment on "lesser included offenses" and a trial court generally lacks jurisdiction to resentence a criminal defendant after execution of sentence begins. (People v. Karaman (1992) 4 Cal.4th 335, 344-345, 14 Cal.Rptr.2d 801, 842 P.2d 100; cf. § 1170, subd. (d) [authorizing trial court to recall sentence and commitment previously ordered within 120 days of the date of commitment on its own motion].)